116 N.J. Super. 195 (1971)
281 A.2d 401
ANGELO R. MOLINO, TRADING AS HOLLYBUSH GARDENS APARTMENTS, PLAINTIFF,
v.
MAYOR AND COUNCIL OF THE BOROUGH OF GLASSBORO, A MUNICIPAL CORPORATION; PLANNING BOARD OF THE BOROUGH OF GLASSBORO; WESLEY MYERS AND ROBERT ADAMS, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 27, 1971.
*197 Mr. John R. Bennie for the plaintiff.
Mr. Martin A. Herman for defendant Planning Board of Borough of Glassboro (Messrs. Herman, Pearson & Dubler, attorneys).
Mr. Harris Y. Cotton for defendants Mayor and Council of Borough of Glassboro, Wesley Myers and Robert Adams (Messrs. Falciani, Cotton, Chell & Stoinski, attorneys).
SCHALICK, A.J.S.C.
This is an action in lieu of prerogative writ brought by the plaintiff, Angelo R. Molino, a building contractor, against the Planning Board, the Borough Council, the Building Inspector, and the Zoning Officer of the Borough of Glassboro to invalidate an ordinance enacted on February 10, 1970, which amends the Borough Zoning Ordinance affecting apartment house construction. The plaintiff also seeks to compel the granting of site plan approval for plans to erect 172 garden apartment units which would constitute the second section of an existing, adjacent *198 apartment complex known as Hollybush Gardens and to require the Borough officials to issue the necessary zoning and building permits for the project.
The plaintiff, during 1966, contemplated the building of an apartment project. In consultation with the government agency, a site was selected consisting of 17.5 acres on the west side of Delsea Drive in the borough. At the inception 324 garden apartment units were proposed, but meetings with the Planning Board narrowed the proposal to 252 units to meet local requirements.
In 1967, site plans for a 252 unit project were submitted to the Federal Housing Administration, but this agency would only finance at that time 80 units. A suggestion was made that if the accepted project proved successful, the remaining 172 units would then be considered. During the same year the Planning Board approved the 80 unit project as Hollybush Gardens, and zoning and building permits were issued.
In November 1969 section one was completed and occupied. Then the plaintiff secured approval from F.H.A. for section two, and in December 1969 site plan for section two was submitted to the Planning Board. On January 6, 1970, the Board returned the site plan to plaintiff's attorney for modification. On January 20, 1970, revised plans were returned for study. On February 10, 1970, the Borough Council enacted an Ordinance to amend the Zoning Ordinance with these pertinent provisions:
1. In any given garden apartment complex, at least 70 per cent of all units could have no more than one bedroom. No more than 25 per cent may have two bedrooms, and no more than 5 per cent could have three bedrooms.
2. Minimum floor space requirements: 750 sq. feet  one bedroom units, 900 sq. feet  two bedroom units, 1200 sq. feet  three bedroom units.
3. All electrical and utility wires must be beneath the surface of the ground.

*199 4. Not more than 14 dwelling units could be erected on an acre.
5. Two off street parking spaces must be provided for each unit.
6. At least one automatic laundry washer and dryer must be provided for every eight bedrooms.
7. At least 8 sq. feet of swimming pool or tennis court space must be provided for every 100 sq. feet of living space.
8. Each apartment unit must have a central air-conditioning unit.
9. Each building must have a master T.V. antenna.
10. There must be at least two doorways to each apartment unit. There must be a separate stairway leading from each doorway in second story apartments.
11. Each apartment must have an automatic garbage disposal unit.
In addition to the foregoing, the ordinance also contained provisions which increased the minimum yard and frontage requirements, required certain kinds of landscaping, increased the fireproofing requirements, and required a planting screen as a buffer.
Two weeks after the Borough Council enacted the ordinance, the Planning Board rejected the site plan because of non-compliance with the new ordinance.
The plaintiff contends that in reliance upon the representation made to him by the officials that he had site plan approval to complete the development, and as a result he had the right to proceed despite the zoning change. He alleges that the 1967 application to the Planning Board resulted in full approval of the construction of the 172 units and thereby he was protected from further changes by this ordinance.
Another point of attack by the plaintiff was the allegation that the Planning Board did not act upon the site plan within 45 days after it was submitted, and the failure to act operated as an approval under N.J.S.A. 40:55-1.18.
*200 The plaintiff also alleges that the statutory requirements for the adoption of the ordinance were not complied with as provided in N.J.S.A. 40:49-2 et seq., and such amendment is void.
One of the substantial points made by the plaintiff was that the ordinance is illegal and unconstitutional because its requirements were an unreasonable and arbitrary exercise of municipal power in that it was violative of sound zoning in the Borough of Glassboro.
If the plaintiff was granted approval for the entire project and in reliance on that approval he expended substantial sums to make improvements, the court must evaluate his position. The burden of proving the approval rests with the plaintiff. The court can only conclude that there was no approval of the 172 apartment units for no formal action was ever taken, and only the approval was given for section one. Considerable testimony was offered which never gained any strength to show full project approval but only embraced conversations with officials as to future intentions. The Planning Board and the Board deny that any such approval was given, or that the approval for section one was conditioned for further approval. It was admitted by all parties that there was no formal municipal action, and no testimony was offered which would cause the court to conclude that any such approval was supplied by the action of the parties. The plaintiff also fails to show that any substantial sums of money were expended for improvements which would sustain his contentions.
A review of our decisions indicates that the action upon which the developer is entitled to rely must be an official action or something that appears to be such by a municipal body or municipal officer which that body or officer had the legal right to undertake, and not merely informal communications. Tremarco Corp. v. Garzio, 32 N.J. 448 (1960); Gruber v. Mayor and Tp. Committee of Raritan Twp., 39 N.J. 1 (1962). The court has already resolved this question.
*201 Moreover, the plaintiff testified that the construction of section two would be in excess of two and one-quarter million dollars, whereas the highest figure quoted, and that by the plaintiff himself, was an expenditure of $51,000.00 in reliance on the approval for additional improvements. Other testimony lessened this amount. Two per cent cannot be considered a substantial amount in relation to the project cost, particularly when the plaintiff did not begin actual construction. See Anderson, American Law of Zoning, Vol. 2, Sec. 6.23.
We then come to the question of the effect of the Planning Board's conduct from December 1969 until the adoption of the ordinance. The evidence fails to support the plaintiff's allegation that he secured approval by the Board by their failure to act as set forth in the statute. There was no final submission of plans which required such action, and when the Board could have acted, the zoning change prevented such approval.
The ordinance met all statutory requirements in its adoption. The plaintiff's proofs did not show a failure of the Borough to comply with the statutory provisions. The substantial compliance is supported by the official records of the Planning Board and the Borough Council. A complete review is necessary to make such a determination and a fragmented effort to show minor lapses in procedure, gathered from different oral versions of the happenings, merit no concern by the court.
The zoning ordinance as amended presents serious questions as to its validity. The purpose of zoning is well known. The actions taken under the guise of zoning continue to cause grave concern. It cannot be used as a means to solve all collateral municipal problems. There is a presumption of validity if it meets the statutory and constitutional requirements.
The defendants during the trial admitted on several occasions that this ordinance was designed to keep children out of Glassboro, because more children require more schools *202 and as a result higher taxes. If the issue is narrowed to the resolution of the legality of such action by a governing body, the immediate reaction is not favorable. The provisions of the ordinance must be analyzed.
No less than 70 per cent of all apartments shall be one bedroom units. We know this denies occupancy by families with children. And no more than 5 per cent shall be three bedroom units. This is a minimal provision. No more than 20 per cent may have two bedrooms, which by design limits the family size.
Complete fireproofing, underground electric and telephone facilities, the need for which may be arguable, parking requirements for two automobiles for each dwelling unit, more than one exit for each dwelling unit, an enclosed play space of 60 feet by 100 feet per building, so many square feet of swimming pools or tennis courts for every 100 square feet of living space or recreational facilities of equal value, and similar unusual requirements, cannot be provided so as to meet the needs of the middle income family, apart from the consideration of low income families.
The court had the advantage of testimony by citizens and officials, studies by experts, municipal projections, and the analysis of the Borough needs for housing. The court finds there would be no market for such high rental apartments under this ordinance in the Borough, while the immediate need is for a blend of living units for middle income and low income families. A part of the town is occupied by a State College and there is also a need for student housing and for their families, and the families of those employed at this educational institution.
The court notes that the professional consultant to the Planning Board had not recommended either the apartment ratios or the mandatory recreational facilities.
In the name of control of density of population and the general welfare of the community, the defendants maintain that they are exercising the right to upgrade the apartment *203 ordinance. They are urging judicial sanction be given to their efforts to avoid an increase of tax burdens.
The court finds from the testimony that section one, now constructed and occupied, has 18 one bedrooms, 50 two bedrooms, and 12 three bedrooms. The defendants offered testimony that this unit has 51 school children, 44 in elementary schools and 7 in high school, and that the resulting educational cost is $36,031.40, apart from other municipal services. The tax revenue for 1971 received from this complex was $23,859.00. The officials admit a need for low income housing and have hopeful plans to meet the demand. The need has not been met.
This is not a case where a decision has been made that there is no need for additional apartments or that the subject area is not adaptable to apartments. The plaintiff's application for section two included the same type of apartments as in section one, which would have been permitted under the ordinance until amended. If section two were built it would be adjacent to the present complex in section one. There can be no objectionable features as to the location of the section two development.
Glassboro needs housing for its own citizens. The governing body has by its legislative action approved apartments and at the named locations. It is not disputed that the conditions and circumstances prevailing require municipal efforts to accommodate by the added construction of dwelling units.
The added question is the right of Glassboro, by zoning regulations, to restrict its population to adults and the exclusion of children.
The effort to establish a well balanced community does not contemplate the limitation of the number in a family by regulating the type of housing. The attempt to equate the cost of education to the number of children allowed in a project or a community has no relation to zoning. The governmental cost must be an official concern but not to an extent that it determines who shall live in the municipality. *204 With all our advances in expertise, it is doubtful if the cost for educating children can ever be a profitable undertaking.
There is a right to be free from discrimination based on economic status. There is also a right to live as a family, and not be subject to a limitation on the number of members of that family in order to reside any place. Such legal barriers would offend the equal protection mandates of the Constitution.
Our courts have upheld the regulation of apartments, the land areas for dwelling units, the limitation of congestion, the requirements for living and recreation space, the exclusion of residential uses consistent with the needs of the region as well as the limitation of the type of permissible uses within the municipality. There must be a case by case analysis, with concern for a legal use of the land and the health, safety and welfare of the people.
Exclusionary zoning may lead to illegal and unwanted conditions, which are violative of individual rights. No municipality can isolate itself from the difficulties which are prevalent in all segments of society. When the general public interest is paramount to the limited interest of the municipality then the municipality cannot create road blocks. Zoning is not a boundless license to structure a municipality.
This amendment to the ordinance can find no legal support when its provisions are analyzed in relation to the Borough of Glassboro. This determination can only be made when the trial record is adequate to fully reveal the needs of this community. Counsel for the parties made this possible. Justice Hall, in supporting a use variance in DeSimone v. Greater Englewood Housing Corp., 56 N.J. 428 (1970), held "as a matter of law in the light of public policy and the law of the land" that housing needs must be met by official action. The same reasoning applies to the instant case when the governing body legislates to defy the public need for housing.
*205 Apartments under the amended ordinance cannot be constructed by the plaintiff in Glassboro because it is not economically feasible. This is a community where Mr. Average Man lives with his family. He cannot pay high rentals, which the proofs conclusively show would be necessary. He buys in the business district. He is employed in industry, or other places of employment. He should not be barred from living there.
The amendment to the ordinance is null and void.
Judgment will be entered in accordance with the conclusions.