Fuchsberg, J.
The issues posed are (1) whether the Town Board of the Town of Huntington exceeded its powers by amending its zoning ordinance to create a residence district providing, among other uses, for a "Retirement Community District” and (2) whether a subsequent resolution of the town board granting an application of defendant Health Care Agencies of the New York Annual Conference of the Methodist Church, Inc. (Health Care Agencies), a nonprofit New York corporation, to rezone its 20-acre parcel of land from a "Residence B district” (single-family dwellings on minimum one-acre plots) to a "Retirement Community District” for the purpose of building residences designed for older people was valid.
This action, for declaratory judgment and injunctive relief, is brought by individual homeowners living in the area of the proposed retirement community. Following trial, the Supreme Court upheld both the amendment and the resolution. The Appellate Division unanimously affirmed. We hold that the town board’s zoning power was validly exercised in its adoption of the amendment in question and that Health Care Agencies’ subsequent. application thereunder was properly granted.
The amendment, now chapter 62, section 4.9.01 of the Building Zone Ordinance of the Town of Huntington, was adopted following a public hearing. It reads as follows:
"In the R-RM Residence District a building or premises shall be used only for the following purposes:
"(1) Any use permitted in the R-80 Residence District [single-family dwellings on minimum two-acre plots and other uses including farms, churches, schools and libraries].
"(2) Multiple residences designed to provide living and dining *484 accommodations, including social, health care, or other supportive services and facilities for aged persons to be owned and operated by a non-profit corporation organized for such purposes under the laws of the State of New York.
"(3) Any accessory use or structure permitted in the R-80 Residence District”.
After the amendment was adopted, Health Care Agencies applied for a reclassification as "Retirement Community District” for its 20-acre parcel, presenting a plan which provided the facilities enumerated in the ordinance’s amendment. The application was granted following a public hearing. None of the plaintiffs appeared or in any other way raised any objection at that hearing or at the earlier one that had preceded passage of the amendment itself. Plaintiffs now claim that the town board exceeded the zoning powers delegated it by the Legislature and impermissibly applied a classification based upon age.
The relevant enabling legislation pursuant to which the town board has the power to zone is section 261 of the Town Law. By that statute the State has empowered the town to regulate and restrict the use of land "[f]or the purpose of promoting the health, safety, morals, or the general welfare of the community”. In our view, this grant provides a sufficient basis for the Town of Huntington’s zoning law amendment to provide for multiple residences for elderly people.
The police power which provides the justification for zoning is not narrowly confined. (Village of Belle Terre v Boraas, 416 US 1.) As Judge Keating put it for this court, "[underlying the entire concept of zoning is the assumption that zoning can be a vital tool for maintaining a civilized form of existence only if we employ the insights and the learning of the philospher, the city planner, the economist, the sociologist, the public health expert and all the other professions concerned with urban problems.” (Udell v Haas, 21 NY2d 463, 469.)
In view of the breadth of the grant of power and the presumption favoring constitutionality of zoning ordinances (Dauerheim, Inc. v Town Bd. of Town of Hempstead, 33 NY2d 468, 473-474; Mary Chess, Inc. v City of Glen Cove, 18 NY2d 205, 209), we have concluded that the town board’s amendment to Huntington’s zoning ordinance has a rational basis. Its purpose—meeting the town’s need for adequate housing for *485 the aged—was within the town’s police powers to regulate land use for the promotion of the community’s health and general welfare. Not only was this an important goal of the Town’s Comprehensive Plan,[1] but a matter of general public concern not only to the locality but to the State and Nation as well.[2]
Though the town has no burden to establish a need for the amendment (Thomas v Town of Bedford, 11 NY2d 428, 434), there was unrebutted testimony at trial that studies showed the town’s elderly population was increasing at a substantially greater rate than had been anticipated and that there was considerable and justifiable community concern over the lack of available specialized housing for the aged.[3]
It is also to be noted that the town’s good faith effort to meet the special needs of its elderly, who otherwise would be likely to be excluded from enjoyment of adequate dwellings within the community, is inclusionary. The inclusionary, as distinguished from exclusionary, nature of such land use is made clear by the town board’s conclusion (1) that there is a present shortage for housing for people when they get older, (2) that without the creation of the retirement district that need will go unredressed, and (3) that ameliorating the need in this way will impose no particular hardship on other groups of persons who suffer from significant lack of housing. Certainly, when a community is impelled, consistent with such criteria, to move to correct social and historical patterns *486 of housing deprivation, it is acting well within its delegated "general welfare” power.
Plaintiffs do not claim they would suffer exclusion or disadvantage in their own housing. At trial, they merely offered one witness, a real estate appraiser, who testified that Health Care Agencies’ proposed retirement community would increase traffic in the neighborhood and reduce the value of surrounding residential properties, which he valued at $75,000 to $100,000. But it is well-settled that a possible depreciation in value to particular property owners will not shield an existing zoning classification from adaptation to changing community needs (see, e.g., Shepard v Village of Skaneateles, 300 NY 115, 118, 120). In brief, plaintiffs fell far short of meeting their burden of showing that the amendment was arbitrary rather than rational. (See Seattle Trust Co. v Roberge, 278 US 116, 122.)
Nor. do plaintiffs suggest that Huntington was in error in assessing the need for suitable housing for its elderly population, or that the plan submitted by Health Care Agencies in any way fell short of the standards of the ordinance, requiring as they do "living and dining accommodations, including social, health care, or other supportive services and facilities for aged persons”. While the amendment under attack makes express provision, among other uses, for suitable housing for the elderly, as with special zoning for schools it does no more in this case than implement the entirely supportable belief by the town that the aged require specially designed accommodations.
Matter of Central Mgt. Co. v Town Bd. of Oyster Bay (47 Misc 2d 385, affd 24 AD2d 881), on which plaintiffs place such heavy reliance, is, in our opinion, inapt. There, the town board had denied a request for a special exception permit to build garden-type apartments containing 75% units for the elderly and 25% for others. Though this type of apartment development was a permissible use under the zoning ordinance, the application was denied because the board concluded that the comfort of the proposed elderly residents would be disturbed by noise, problems of inadequate private and public transportation, and the distance of the proposed site from medical and banking facilities. In reversing that denial, the Supreme Court stressed that the board had acted in an administrative rather than a legislative capacity and found it had improperly considered the age of potential occupants of the proposed premises *487 in determining whether or not to grant a special exception permit. Significantly, the court also found the board’s findings that the site was "undesirable” for the elderly contrary to the evidence. By contrast, the instant case involves an ordinance enacted by the Huntington Town Board in its legislative capacity and providing standards for its application in a particular case, as well as a subsequent determination pursuant to that ordinance which is supported by substantial evidence.
It is one thing for a local zoning board to deny an application based solely upon the age of the intended residents; it is quite another for it to establish a zoning district allowing, among other things, residences designed for, but not necessarily limited to, aged persons. "Age” considerations are appropriately made if rationally related to the achievement of a proper governmental objective. Here, as already indicated, meeting the community shortage of suitable housing accommodations for its population, including an important segment of that population with special needs, is such an objective.
In the particular case before us, there is no indication whatever that the intent or effect of the ordinance is to segregate the community according to age or discriminate against younger people (cf. Molino v Mayor & Council of Borough of Glassboro, 116 NJ Super 195; Taxpayers Assn. of Weymouth Twp. v Weymouth Twp., 125 NJ Super 376), or to benefit a particular building developer in the absence of community need for specialized housing for the elderly (cf. Hinman v Planning & Zoning Comm., 26 Conn S 125), Neither does the ordinance contain an arbitrary specific age limitation for residency (cf. Shephard v Woodland Twp. Committee & Planning Bd., 128 NJ Super 379). And the town’s unimpeachable good faith has not given rise even to a suspicion that it was seeking to reap tax base benefits through multidwellings without the drain on municipal services created by families and children. (Cf. Golden v Planning Bd. of Town of Ramapo, 30 NY2d 359, 378.)
That the "users” of the retirement community district have been considered in creating the zoning classification does not necessarily render the amendment suspect, nor does it clash with traditional "use” concepts of zoning. Including the needs of potential "users” cannot be disassociated from sensible community planning based upon the "use” to which property is to be put. The line between legitimate and illegitimate *488 exercise of the zoning power cannot be drawn by resort to formula, but as in other areas of the law, will vary with surrounding circumstances and conditions (Euclid v Ambler Co., 272 US 365, 387). Therefore it cannot be said that the board acted unreasonably in this case in making special provision for housing designed for the elderly, one of the major groupings within our population.[4]
"Senior citizenship” may be more appropriately regarded as a stage in life within the normal expectancy of most people than as an unalterable or obstinate classification like race (cf. Buchanan v Warley, 245 US 60; Dailey v City of Lawton, 425 F2d 1037; Kennedy Park Homes Assn. v Lackawanna, 436 F2d 108, cert den 401 US 1010), religion or economic status. Therefore, providing for land use suitable for the elderly may, as here, be viewed as a nondiscriminatory exercise of the power to provide for the general welfare of all people, especially since, even if the validity of that zoning classification were "fairly debatable, [the town board’s] legislative judgment must be allowed to control.” (Euclid v Ambler Co., supra, at p 388).
Accordingly, the order of the Appellate Division should be affirmed.

. The Comprehensive Town Plan of the Town of Huntington (p 5) states the importance of "Population Composition” in town planning as follows: "[f]or planning purposes, the composition of the population is as important as sheer numbers. * * * Age composition is significant as an aid in programming not only schools, but recreational requirements and the needs of the elderly.”

. (See NY Const art XVIII, § 1 ["nursing home accommodations for persons of low income”]; Private Housing Finance Law, § 11 [declaring “seriously inadequate supply of safe and sanitary * * * aged care accommodations for aged persons of low income * * * constitute^] an emergency and a grave menace to the health, safety, morals, welfare and comfort of citizens of this state”]; National Housing Act, US Code, tit 12, § 1701r ["Congress finds that there is a large and growing need for suitable housing for older people both in urban and rural areas. Our older citizens face special problems in meeting their * * * need for housing planned and designed to include features necessary to the safety and convenience of the occupants in a suitable neighborhood environment.”].)

. It has been observed that older people are now playing an increasing active role in our society and their common residential pattern is changing from dependence on their children or upon institutions to one in which individuals and couples seek to live in their own homes, many in retirement communities. (See Neugarten, The Rise of the Young and Old, New York Times, Jan. 18, 1975, p 29.)

. The New York State Executive Department, Office of the Aging, reports that as of 1970, 2,822,914 people in New York State were 60 or older; 121,533 of them resided in Suffolk County, in which Huntington is located; and 18,149 of them lived in Huntington. Half of New York’s elderly lived in rented units. They occupy 1 out of 5 dwelling units in the State. (From the Department’s "Facts & Ideas about Older Persons in New York State”, Report No. 1 and Report No. 2 [1974].) According to the report, "[t]he growth of the older population has been phenomenal. Since the turn of the century, there has been a five-and-one-half-fold increase”. (Report No. 1, p 9.)