George F. X. McInerney, J.
After a trial without a jury the court denies the plaintiffs’ request for a declaratory judgment and a permanent injunction.
In May of 1974 the Brookhaven Town Board passed a resolution amending the zoning ordinances and zoning maps of the Town of Brookhaven creating a "PRC” residence district on a 96-acre parcel of land located in Union Free School District No. 32 at Mastic in the Town of Brookhaven then zoned "K” business district and "B” residence district.
Plaintiffs seek a declaratory judgment that the action of the town board in granting the change of zone was arbitrary and beyond the police power of the town. The change of zone was to establish a planned retirement community limiting occupancy of residences to persons 55 years of age and over. The premises are bounded on the south by Moriches Bay, on the west by the Forge River, on the north principally by the Long Island Railroad, and on the east by Ely Creek. They also seek a permanent injunction against the defendants, agents, employees and officers from proceeding with developing the 96 acres for any purposes other than those permitted in the "K” business district and the "B” residence district. "K” business district permits the use as a duck farm and "B” residence district permits plots of 15,000 square feet. Plaintiffs also seek a declaratory judgment declaring article IXA of chapter 85 of the Town Code null and void and of no force and effect, on the grounds that the article is unconstitutional, as it violates the "equal protection clauses” of the Constitution of the State of New York and the Fourteenth Amendment of the United States Constitution, in that it discriminates on the basis of age. The plaintiffs with two exceptions are concededly all over the age of 55. They do not live in this school district.
Previously to this trial the motion for a preliminary injunction was denied by Mr. Justice Victor J. Orgera.
Plaintiffs claim that the change requested is for spot zoning, that the said amendments are arbitrary, unreasonable, illegal, discriminatory, and a clear abuse of legislative authority granted to the defendant Town Board of Brookhaven pursuant to section 261 of the Town Law. Plaintiffs further claim that their property will be damaged by the change of use since the number of persons occupying the parcel will be greater under this zoning change than under the prior zoning.
As to the question of "standing” the plaintiffs do not convince the court that they have standing.
*99 Quoting from Warth v Seldin (422 US 490, 508): "a plaintiff who seeks to challenge exclusionary zoning practices must allege specific, concrete facts demonstrating that the challenged practices harm him, and that he personally would benefit in a tangible way from the courts’ intervention.”
The court states in its opinion in Beaux Arts Props. v United Nations Development Corp. (68 Misc 2d 785, 789): "It is now too firmly imbedded in our law to be questioned, particularly by a Judge sitting at nisi prius, 'that the constitutionality of a State statute may be tested only by one personally aggrieved thereby, and then only if the determination of the grievance requires a determination of constitutionality * * * an unaggrieved citizen-taxpayer * * * lacks standing to challenge a statute’s constitutional validity’ ”. However, the court in view of the length of the trial and the quality of the testimony will, under the more liberal policy enunciated in Matter of Douglaston Civic Assn. v Galvin (43 AD2d 739, affd 36 NY2d 1), assume the plaintiffs have standing to bring this action in view of their proximity to the land in question and their mutual exposure to or interest in the flowing as well as the underground waters touching their boundaries.
To rezone a 96-acre parcel of land to "PRC” residence could hardly be called spot zoning. (Rodgers v Village of Tarrytown, 302 NY 115.) "That the size of the area involved is relevant to the analysis of a spot zoning problem is reflected in the language of the courts. The decisions disavow size or limited ownership as factors which control decision, but the characterization of spot zoning as a change which affects a small area is quite routine. Even in Rodgers v. Tarrytown, the Court of Appeals decision which contains the classic definition of spot zoning, the court talked in terms of an amendment which 'affected a small parcel of land.’ ” (1 Anderson New York Zoning Law and Practice [2d ed], p 138.)
The testimony introduced by defendants establishes that there is a demand by many older people for living accommodations tailored to their needs. This group desires greater security services, a closer concentration of services, more general transportation facilities rather than individual automobiles, closer hospital and medical services, fewer irritations from the boisterousness of young children and some older children, and for a concentration of people with similar group interests. The proof established that such a facility is most probably successful for the developer financially and the occu *100 pant socially when the prohibition against the infiltration of younger people is enforced by law, rather than voluntary agreement.
The objections raised by the plaintiffs do not establish the unreasonableness of the ordinance or the rezoning other than the age limitation imposed by the statute.
The age of 55 was selected because such people are considered in general to be an age group that is no longer primarily interested in a child-oriented family of their own.
The issue then, is whether the exclusion by law of people under 55 in a residential area is constitutionally defective because of unreasonable discrimination.
In a New Jersey case, a similar statute was voided. (Taxpayers Assn. of Weymouth Twp. v Weymouth Twp., 125 NJ Super 376.) The court states (pp 380-381): "The quoted ordinance provisions would limit occupancy in a specified zoning district of the municipality to those 52 years of age and over, and those under that age but over 18 years old who are members of a family 'the head of which, or his spouse, is 52 years of age or over.’
"[1] Nothing in N.J.S.A. 40:55-30, which grants zoning power to municipalities, authorizes a zoning regulation limiting the age of those, whether it be individuals or families, who may reside in a structure, be it a house or mobile home, otherwise permitted in a particular zoning district.
"[2] All that a municipality may validly be concerned with, in the exercise of its zoning power is the physical use of lands and structures thereon. Bridge Park Co. v. Highland Park, 113 N.J.Super. 219, 221-222 (App.Div.1971).
"As this court said in Bridge Park Co. v. Highland Park, in striking down an ordinance provision which would have barred conversion of an apartment house into condominium ownership: 'A quick reading of [N.J.S.A. 40:55-30] discloses no power granted to. a municipality to regulate the ownership of buildings or the types of tenancies permitted. It is obvious that each phrase in the statute refers either to the type of construction or the use permitted on real property within the confines of a municipality.* * * We conclude that the word 'use,’ as contained in the statute above, does not refer to ownership but to physical use of lands and buildings. [Emphasis added]’
"[3] The physical use of a mobile home in a trailer and *101 mobile home district is the same irrespective of the age of the head of the family occupying it or those making up the family unit. A municipality may not regulate the age or makeup of the family unit permitted to reside in the structure. Cf. Bridge Park Co. v. Highland Park, supra; Molino v. Mayer, etc., Glassboro, 116 N.J.Super. 195, 281 A.2d 401 (Law Div. 1971); City of Des Plaines v. Trottner, 34 Ill.2d 432, 216 N.E.2d 116 (Sup.Ct.1966); Hinman v. Planning and Zoning Comm’n, 26 Conn.Sup. 125, 214 A.2d 131 (Ct.Com.Pl.1965); see also Kirsch Holding Co. v. Manasquan, 59 N.J. 241 (1971).”
The following observation is found in Boraas v Village of Belle Terre (476 F2d 806, 815):
"Turning to the question of whether the Belle Terre ordinance may be sustained upon application of the foregoing principles, we start by examination of the sole ground upon which it was upheld by the district court, namely the interest of the local community in the protection and maintenance of the prevailing traditional family pattern, which consists of occupancy of one-family houses by families based on consanguinity or legal affinity. In our view such a goal fails to fall within the proper exercise of state police power. It can hardly be disputed — and the district court so found — that the ordinance has the purpose and effect of permitting existing inhabitants to compel all others who would take up residence in the community to conform to its prevailing ideas of lifestyle, thus insuring that the community will be structured socially on a fairly homogeneous basis. Such social preferences, however, while permissible in a private club, have no relevance to public health, safety or welfare. See Kirsch Holding Co. v. Borough of Manasquan, 59 N.J. 241, 281 A.2d 513 (1971); City of Des Plaines v. Trottner, 34 Ill.2d 432, 216 N.E. 2d 116 (1966); cf. Moreno v. U.S. Dept of Agriculture, 345 F.Supp. 310 (D.D.C.) (three-judge court) (per McGowan, Cir. J.), prob. jur. noted, 409 U.S. 1036, 93 S.Ct. 526, 34 L.Ed. 2d 485 (1972).
"The effect of the Belle Terre ordinance would be to exclude from the community, without any rational basis, unmarried groups seeking to live together, whether they be three college students, three single nurses, three priests, or three single judges. Although local communities are given wide latitude in achieving legitimate zoning needs, they cannot under the mask of zoning ordinances impose social preferences of this character upon their fellow citizens. To permit such action would be to invite, upon similar guise, zoning laws that would *102 restrict occupants to those having no more than two children per family, those employed within a given radius, those earning a minimum income, or those passing muster after interview by a community 'Admissions Committee.’ While such selective exclusion may be practiced by private institutions, it cannot be tolerated on the part of a governmental body such as Belle Terre, which is bound to serve the public.”
In Shephard v Woodland Twp. Committee & Planning Bd. (128 NJ Super 379, 383-384) the court held:
"The question whether the line to be drawn to define 'senior citizen’ as a qualification for occupancy ought to be by a numerical age or whether some other means of definition or identification ought to be devised is a matter of exercise of discretion and normally, in matters of this kind, that exercise of discretion is a legislative rather than a judicial function. The court’s function, on review, is to determine whether there is a rational relationship between the legislative line drawn and the goals sought to be attained. In the absence of such relationship, the drawing of the line would be arbitrary and not sustainable.
"The ordinance actually effectively permits or is intended to establish as a permitted use of certain life style if we are to read the amendment regulations as a whole and consider the thrust of defendants’ arguments that it is to provide answer to the needs and desires of persons intending to live in a given way and to allow units designed to answer that need in a manner compatible with efficient and effective community planning. However, this court has grave concern that one’s age is an adequate and fair qualification for permitted occupancy in a given life style. Here residency is restricted to persons who are 52 years of age or -hver. What is to be said of a married couple or an unmarriqd couple living 'as a family’ with only one of that couple over the age of 52 years. Is that family to be deprived of qualification to live in that given life style, i. e., the specifically designed residential units allowed by the regulating ordinance. Similarly, is a family, one or both of whom is not 52 years of age or older, to be deprived of their right of privacy to select associations and select a home of their personal needs, which right is otherwise accorded to a family where both are over the age of 52 years. The effect of the age qualification for residency appears to this court to be an unconstitutional discrimination. Molino v. Mayor, etc., Glassboro, 116 N.J.Super. 195, 204 (Law Div.1971); Kirsch *103 Holding Co. v. Manasquan, 59 N.J. 241 (1971); Taxpayers Ass’n of Weymouth Tp. v. Weymouth Tp., supra.
"It is the conclusion of this court that authorization of a senior citizen community as a land use regulation is not foreign to the authority granted to municipalities in the enabling act, but that the qualification for residency therein limited to persons 52 years of age or over is constitutionally impermissible; that such age qualification bears no realistic relationship to a recognized objective of zoning legislation.
"To the extent that the ordinance amendment in question limits residence in the permitted use in an R-A zone to persons by age, the amendment is invalid.”
The issue here was approached in this State in Maldini v Ambro (36 NY2d 481). Here the town attempted to provide housing specifically designed for elderly people. The court stated (p 484-485): "The relevant enabling legislation pursuant to which the town board has the power to zone is section 261 of the Town Law. By that statute the State has empowered the town to regulate and restrict the use of land '[f]or the purpose of promoting the health, safety, morals, or the general welfare of the community’. In our view, this grant provides a sufficient basis for the Town of Huntington’s zoning law amendment to provide multiple residences for elderly people.”
"In view of the breadth of the grant of power and the presumption favoring constitutionality of zoning ordinances (Dauerheim, Inc. v. Town Bd. of Town of Hempstead, 33 N.Y. 2d 468, 473-474; Mary Chess, Inc. v. City of Glen Cove, 18 N.Y. 2d 205, 209), we have concluded that the town board’s amendment to Huntington’s zoning ordinance has a rational basis. Its purpose — meeting the town’s need for adequate housing for the aged — was within the town’s police powers to regulate land use for the promotion of the community’s health and general welfare. Not only was this an important goal of the Town’s Comprehensive Plan, but a matter of general public concern not only to the locality but to the State and Nation as well.”
The ordinance did not regulate the age of the users of the housing, unlike the present statute. The court further stated in its opinion (p 487), upholding the validity of the ordinance that: "It is one thing for a local zoning board to deny an application based solely upon the age of the intended residents; it is quite another for it to establish a zoning district *104 allowing, among other things, residences designed for, but not necessarily limited to, aged persons. 'Age’ considerations are appropriately made if rationally related to the achievement of a proper governmental objective. Here, as already indicated, meeting the community shortage of suitable housing accommodations for its population, including an important segment of that population with special needs, is such an objective.
"In the particular case before us, there is no indication whatever that the intent or effect of the ordinance is to segregate the community according to age or discriminate against younger people (cf. Molino v. Mayor & Council of Borough of Glassboro, 116 N.J.Super. 195; Taxpayers Assn. of Weymouth Twp. v. Weymouth Twp., 125 N.J.Super. 376), or to benefit a particular building developer in the absence of community need for specialized housing for the elderly (cf. Hinman v Planning & Zoning Comm., 26 Conn. S. 125). Neither does the ordinance contain an arbitrary specific age limitation for residency (cf. Shephard v. Woodland Twp. Committee & Planning Bd., 126 N.J.Super. 379).”
The dissenting Judges would prohibit the restrictions of the use of land solely for the benefit of the aged, holding that the Town Law empowers the Town Board to regulate the use and not the users of land.
If such a restriction is constitutional, and land may be so regulated by municipal fiat that the election of where and with whom to live is at the discretion of government, the spectre of a completely stratified society looms nearer in the background, and sociologists would do well to study the rules and techniques of those other social creatures, the ants and the bees.
The court finds that paragraph D of article IX-A of the Zoning Code of the Town of Brookhaven is unconstitutional.