OPINION OF THE COURT
Vincent R. Balletta, J.
This action comes before the court as a submission upon an agreed statement of facts pursuant to CPLR 3222. Plaintiffs are seeking a declaration that a portion of the zoning ordinance of the Town of North Hempstead is unconstitutional and invalid. Specifically, the provision under attack is contained in chapter 70 (art X, § 70-89) of the code of ordinance of the town.
Article X provides for a Golden Age Residence District permitting only multiple residence dwellings and accessory buildings designed for use by “senior citizens”. Section 70-89 provides as follows:
“Definition of Senior Citizens.
“A. For the purposes of this Article, senior citizens shall be defined as individuals, male or female, who are sixty-two (62) years of age or more, or couples in which at least one (1) of the individuals is sixty-two (62) years of age or more.
*796 “B. Senior citizens who apply for residence in a Golden Age Residence District shall have legally resided in the Town of North Hempstead for at least one (1) year previous to the date of said application.”
The plaintiffs argue that they do come within the definition of “senior citizens” as set forth in subdivision A, but that they cannot purchase a condominium unit in the Port Harbor Condominium Development in Port Washington owned by defendants KLM & M Developers, Inc. by virtue of the fact that they do not meet the residency requirements of subdivision B. Plaintiffs contend that this section violates both the United States and New York State Constitutions.
The pivotal question as to the constitutionality of a zoning ordinance which has both an age requirement and a residency requirement is one of first instance, there being no previous court decisions in this State.
Local zoning ordinances, as other legislative enactments, are entitled to a strong presumption of constitutionality. (Marcus Assoc. v Town of Huntington, 45 NY2d 501.) Although that presumption is rebuttable, the courts should not invalidate legislation unless unconstitutionality is demonstrated beyond a reasonable doubt. (Lighthouse Shores v Town of Islip, 41 NY2d 7.)
The power to adopt zoning ordinances has been granted to town boards by section 261 of the Town Law. Section 261 states in pertinent part: “For the purpose of promoting the health, safety, morals, or the general welfare of the community, the town board is hereby empowered by ordinance to regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes * * * The town board is hereby authorized and empowered to make such appropriation as it may see fit for such charges and expenses, provided however, that such appropriation shall be the estimated charges and expenses less fees, if any, collected, and provided, that the amount so appropriated shall be assessed, *797 levied and collected from the property outside of any incorporated village or city”.
It has long been the rule that the power to zone property does not carry with it the power to control its ownership. (Matter of Weinrib v Weisler, 33 AD2d 923, affd 27 NY2d 592.) As the Court of Appeals noted in Matter of Dexter v Town Bd. (36 NY2d 102, 105), there is a “fundamental rule that zoning deals basically with land use and not with the person who owns or occupies it”.
However, there was an abrupt departure from that rule with the decision in Maldini v Ambro (36 NY2d 481). In Maldini, the Court of Appeals approved a zoning ordinance in the Town of Huntington which established a “Retirement Community District”. The majority opinion stated (p 487) that the fact that the district was designed for senior citizens’ use did not “clash with traditional ‘use’ concepts of zoning”. Moreover, it found that senior citizenship is not a discriminatory classification because everyone might normally expect to reach that stage of life. The majority opinion in Maldini took the position that the Legislature has provided a broad grant of power to zone, and further, that the ordinance in question had a rational basis. It emphasized the laudable purpose of providing housing for the elderly and confirmed (p 485) the town’s police power “to regulate land use for the promotion of the community’s health and general welfare” by innuendo suggesting that providing for adequate housing for the aged is a proper exercise of such police power. The court, in several portions of the opinion, emphasized that the ordinance in question does not exclude other uses nor exclude other than senior citizens from residence within the established district, but it is clear that the majority opinion did not base its approval of the ordinance on those limited grounds.
The minority opinion by Judge Jasen, concurred in by Judge Wachtler, in Maldini (supra), takes a more traditional and literal view of the statutory grant of powers, and forcefully argues that the majority is in reality permitting the town to not merely regulate the use of property, but also the users thereof. The dissenting opinion emphasizes (p 488) the well-established rule that the town zoning power “ ‘must be founded upon a legislative delegation to *798 so proceed, and in the absence of such a grant will be held ultra vires and void”’. It is pointed out that the powers delegated to the board by statute are not infinite, but rather are restricted to regulatory powers as specifically set forth in the statute.
Although the dissenting opinion is well reasoned and apparently in conformity with long-standing zoning principles, the majority of the court has sustained the proposition that a town board may, in a senior citizens’ district, provide for an age requirement for the use of the property. It is also obvious, however, that the majority opinion in Maldini (supra, at p 487) is at least partially based upon the principle that “a zoning district allowing, among other things, residences designed for, but not necessarily limited to, aged persons” is valid.
The case of Campbell v Barraud (58 AD2d 570) followed Maldini (supra) and takes a further step in the alteration of the concept that the power to zone provided by statute is limited to the use of the property and not the users. This case clearly abandoned that old-line concept insofar as senior citizens are concerned. In that case, the Appellate Division, Second Department, approved an ordinance in the Town of Brookhaven which established a planned retirement community residence district and restricted occupancy in the district to persons 55 years of age or older, with exceptions providing for: (1) a spouse under 55; (2) children and grandchildren over 19; and (3) adults under 55 if their presence is essential for the physical care or economic support of eligible older persons. While the ordinance involved in Maldini (supra) did not restrict usage in that there was no limitation to aged persons only, the Brookhaven ordinance clearly is one which has a strict limiting effect.
In citing the Maldini decision, the Campbell court stated (supra, at p 572): “If it is within the zoning power of the town to provide for the special housing needs of the elderly, by accommodations specifically designed to satisfy their economic, physical, psychological and social needs * * * it must also be permissible for a town board, acting in its legislative capacity, to ensure that such housing is used by the very group for which it has been designed. It is illogical *799 to encourage the construction of housing geared to the specialized needs of the elderly and then prohibit its exclusive use by such group. Moreover, occupancy restrictions of this nature also ensure that all of the original comprehensive planning and effort will not go for naught after the development has become fully operational. In short, we believe it is essential to the achievement of the purpose of the planned retirement community ordinance, and its rational application, that the population group intended to be served by specifically defined and granted exclusive user status. Regulating the use of land by limiting its users, in a situation of this nature, is, therefore, not inherently objectionable * * * Nor does an ordinance limiting occupancy in a retirement community to persons over a certain age violate the equal protection guarantee.”
Both the Court of Appeals and the Appellate Division, Second Department, have spoken decisively on the question of a zoning ordinance restricting occupancy in the district by virtue of age. Whether those decisions were motivated by the worthy cause of making provision for our senior citizens or not is immaterial. There is no question about the fact that it is now permissible to limit residency within a given area of a municipality to persons of a specific age. This case presents another question since the definition of a senior citizen as set forth in the ordinance is based on something more than age. May a municipality limit residency within a given area to a class of persons on the basis of a one-year residency requirement, the courts having already established that an age limitation is proper?
From a careful analysis of the decision in Campbell (supra), it is apparent that the court, in sustaining the Brookhaven ordinance which limited occupancy of the zoning district to persons 55 years of age or older, found, among other things, the following:
(1) such a provision was essential in order to achieve the purpose of the planned retirement community; and
(2) the restriction did not violate equal protection because age is not a “suspect” criterion and classification based upon age rationally furthers a legitimate objective of *800 the State, i.e., providing for the housing needs of the elderly.
In the view of this court, it would be appropriate to apply a similar analysis as set forth in Campbell (supra) as affects the 55-year age limit, to the one-year residency requirement in thé North Hempstead ordinance which is under attack before this court.
The defendant, Town of North Hempstead, by the ordinance in question, seeks to provide housing for the elderly within its own jurisdiction. The township apparently takes the position that its objective is to provide for those who have been residing within the town for at least one year and that no responsibility exists with respect to those residing outside of the town. The argument is made that the residency requirement is essential to further the stated purpose, and that by providing such housing for its own elderly citizens, housing now occupied within the township by senior citizens would become available for young families.
While it may be true that the residency requirement does have reference to the stated purpose of taking care of the town’s own resident seniors, we cannot overlook the generally accepted law that the power to zone property does not carry with it the power to control its ownership. (Matter of Weinrib v Weisler, supra; Matter of Dexter v Town Bd., supra.) The limited departure from that principle by the Court of Appeals in Maldini (supra) and the Appellate Division, Second Department, in Campbell (supra) cannot be viewed as totally eliminating the more traditional zoning concepts and constitutional limitations placed thereon. While the durational residency requirements would further the total purpose of the ordinance (without regard to the propriety of such restriction), it cannot be denied that the restriction creates two classifications of senior citizens — those who have been residents of the Town of North Hempstead for one year, and those who have not. It affords to one class the right to own and occupy property within a particular zoning district, and it denies the right to the other class, even though the individuals in that class are senior citizens, by utilizing an age definition. The caption in section 70-89 entitled “Definition of Senior *801 Citizens” is truly a misnomer, since subdivision A defines a senior citizen by virtue of age, and subdivision B provides a limitation which cannot in any sense be understood in terms of an age requirement. Either people have reached the age of 62 or they have not. The place of their residence cannot truly affect the status of their senior citizenship.
The Court of Appeals in Group House v Board of Zoning & Appeals (45 NY2d 266, 271) stated: “While the power to zone is a broad one, it is not without limit. It may be exercised only in pursuit of some valid public purpose and cannot serve to justify arbitrary exclusionary efforts.” (Emphasis supplied.)
Having analyzed whether the provision of the ordinance was essential in order to achieve the purpose of the planned retirement community, we now turn to the question of whether the residency restriction is a violation of the equal protection guarantee. A complete analysis of a constitutional equal protection challenge is two-tiered. Initially, the court must determine whether the classification under attack is a so-called “suspect” classification. If the classification is not “suspect”, then the court must consider only whether the classification rationally furthers a legitimate objective of the legislative body. (Alevy v Downstate Med. Center, 39 NY2d 326.) Where, however, the classification is a “suspect” classification, a mere rational basis for the ordinance is not enough, and the classification is subject to a strict scrutiny test and a court will make a painstaking inquiry to ensure the existence of a proper governmental objective. In such a situation, the government must prove the legislative end is justified by a compelling governmental interest. (Alevy v Downstate Med. Center, supra.)
The durational residency requirement in the ordinance under attack infringes upon the fundamental right of travel, and as such, is a “suspect” classification and subject to the strict scrutiny test. {Shapiro v Thompson, 394 US 618; Dunn v Blumstein, 405 US 330; Memorial Hosp. v Maricopa County, 415 US 250.) Since it is subject to the strict scrutiny test, the burden is on the town to prove that the classification is justified by a compelling State interest. As stated by Justice Marshall, in delivering the opinion *802 for the Supreme Court in Dunn (supra, at p 342): “residence laws must be measured by a strict equal protection test: they are unconstitutional unless the State can demonstrate that such laws are ‘necessary to promote a compelling governmental interest.’” This the Town of North Hempstead cannot do.
Providing for the housing needs of the elderly is a legitimate governmental concern. But the durational residency requirement does not further that objective. Rather its aim might be summed up by the phrase “that each community should take care of its own first” an objective which is constitutionally impermissible. (King v New Rochelle Municipal Housing Auth., 442 F2d 646, 649, cert den 404 US 863.) There is no evidence to demonstrate that the need for housing is greater among those senior citizens who have resided in the Town of North Hempstead for one year than it is among those who have resided in the town for a shorter period or who are now nonresidents. Additionally, a municipality may not enact zoning ordinances exclusively for the benefit of its residents while ignoring regional needs. (Berenson v Town of New Castle, 38 NY2d 102.) Moreover, a durational residency requirement may not be enacted for the purpose of rewarding long-term residents for past contributions to the community. (Shapiro v Thompson, supra; Zobel v Williams, 457 US 55.) Since such an objective is not permitted in granting or denying the right to benefits provided by taxes, there is surely no rational basis for considering past contributions where, as here, the benefit provided by the ordinance is in no way dependent upon moneys contributed as taxes by residents of the town.
Under the circumstances, this court has concluded that the durational residency provision contained in the ordinance denies to senior citizens who have not resided in the Town of North Hempstead for at least one year the equal protection guarantees provided by the Fourteenth Amendment to the Constitution of the United States and section 11 of article I of the Constitution of the State of New York. Such a residency restriction is arbitrary and discriminatory and serves no legitimate or valid governmental purpose. “The goal of preventing an influx of outsiders is *803 constitutionally impermissible. The residency requirement is not rationally related to the goal of planning.” (Cole v Housing Auth., 435 F2d 807, 813.)
Accordingly, judgment is granted in favor of plaintiffs declaring that subdivision B of section 70-89 of the code of the Town of North Hempstead is unconstitutional and void.