397 So.2d 964 (1981)
Gary D. LYONS and Nancy D. Lyons, His Wife, Appellants,
v.
Donald KING, James Carpenter, S.L. Stangle, Nicholas Larosa, Laura Downs, Sioux Brown, Gaylord Ridenour, Maurice Henry, Individually and As Members of the Board of Directors of Plaza East Association, Inc.; Plaza East Association, Inc., a Florida Corporation Not for Profit; Donald McMurray and Alice McMurray, Appellees.
No. 78-2495.
District Court of Appeal of Florida, Fourth District.
April 15, 1981.
Rehearing Denied May 19, 1981.
*965 Tobias Simon and Theodore L. Tripp, Jr., of Tobias Simon, P.A., Miami, for appellants.
Welcom H. Watson, Jr., of Watson, Hubert & Davis, Fort Lauderdale, for appellees other than appellees McMurray.
James O. Murphy, Jr., of Rimes, Greaton, Murphy & Batchelder, P.A., Fort Lauderdale, for appellees, McMurray.
BERANEK, Judge.
This is an appeal by plaintiffs from a final judgment entered in favor of defendants after a non-jury trial. Plaintiffs were the prospective purchasers of a condominium unit in the Plaza East Condominium. Defendants were the prospective sellers of the condominium unit and the condominium association. Plaintiffs contracted with the owner to purchase a condominium unit, but the sale did not close due to the Condominium Association's refusal to approve plaintiffs as purchasers.
The purchasers filed suit in three counts. Count I sought specific performance of the sales contract. Count II sought a declaratory judgment to the effect that the restrictions in the condominium documents were void as an unreasonable restraint on alienation of property. Count III sought an injunction against enforcement of the rules and regulations of the Condominium Association. The trial court ruled in favor of the defendants on Counts II and III and found Count I to be moot.
On appeal plaintiffs/appellants contend the court erred in not invalidating the Association's disapproval of them as purchasers. They assert the Condominium Association was guilty of an unreasonable and arbitrary restraint on the alienation of property.
The condominium documents provided in relevant part as follows:
XI. Maintenance of community interests. In order to maintain a community of congenial residents who are financially responsible and thus protect the value of the apartments, the transfer of apartments by any owner other than the Developer shall be subject to the following *966 provisions so long as the condominium exists and the apartment building in useful condition exists upon the land, which provisions each apartment owner covenants to observe:
A. Transfers subject to approval.

1. Sale. No apartment owner may dispose of an apartment or any interest therein by sale without approval of the Association except to an apartment owner.
2. Lease. No apartment owner may dispose of an apartment or any interest therein by lease without approval of the Association except to an apartment owner.
* * * * * *
B. Approval by Association. The approval of the Association which is required for the transfer or ownership of apartments shall be obtained in the following manner:
1. Notice to Association.

(a) Sale. An apartment owner intending to make a bona fide sale of his apartment or any interest therein shall give to the Association notice of such intention, together with the name and address of the intended purchaser and such other information concerning the intended purchaser as the Association may reasonably require. Such notice at the apartment owner's option may include a demand by the apartment owner that the Association furnish a purchaser of the apartment if the proposed purchaser is not approved; and if such demand is made, the notice shall be accompanied by an executed copy of the proposed contract to sell.
(b) Lease. An apartment owner intending to make a bona fide lease of his apartment or any interest therein shall give to the Association notice of such intention, together with the name and address of the intended lessee, such other information concerning the intended lessee as the Association may reasonably require, and an executed copy of the proposed lease.
* * * * * *
C. Disapproval by Association. If the Association shall disapprove a transfer or ownership of an apartment, the matter shall be disposed in the following manner:
1. Sale. If the proposed transaction is a sale and if the notice of sale given by the apartment owner shall so demand, then within 30 days after receipt of such notice and information the Association shall deliver or mail by registered mail to the apartment owner an agreement to purchase the apartment concerned by a purchaser approved by the Association who will purchase and to whom the apartment owner must sell the apartment upon the following terms:
(a) At the option of the purchaser to be stated in the agreement, the price to be paid shall be that stated in the disapproved contract to sell or shall be the fair market value determined by arbitration in accordance with the then existing rules of the American Arbitration Association, except that the arbitrators shall base their determination upon an average of their appraisals of the apartment; and a judgment of specific performance of the sale upon the award rendered by the arbitrators may be entered in any court of competent jurisdiction. The expense of the arbitration shall be paid by the purchaser.
(b) The purchase price shall be paid in cash.
(c) The sale shall be closed within 30 days after the delivery or mailing of said agreement to purchaser, or within 10 days after determination of the sale price if such is by arbitration, whichever is the later.
(d) A certificate of the Association executed by its president and secretary and approving the purchaser shall be recorded in the public records of Broward County, Florida, at the expense of the purchaser.
(e) If the Association shall fail to provide a purchaser upon the demand of the apartment owner in the manner provided, *967 or if a purchaser furnished by the Association shall default in his agreement to purchase, then notwithstanding the disapproval the proposed transaction shall be deemed to have been approved and the Association shall furnish a certificate of approval as elsewhere provided which shall be recorded in the public records of Broward County, Florida, at the expense of the purchaser.
By virtue of these documents, the Condominium Association had the right to approve prospective purchasers of apartments. In case of disapproval, the Association was required to provide another purchaser upon demand of the apartment owner and upon the Association's failure to provide a purchaser, the Association was required to approve the initial sale. These provisions, in effect, constituted a right of first refusal. Other condominium rules provided specific limitations on the right of owners to lease individual units. The documents also required that the Association approve prospective lessees. All lease arrangements were required to be submitted to the Board of Directors for approval. Units could be leased only once during a given calendar year. Leases were to be for a minimum of 6 months and a maximum of one year.
Under these various provisions, the trial court found that the Condominium Association acted within its legal rights in rejecting plaintiffs as applicants for purchase of an apartment.
The appellants admit that the restrictions are reasonable as written but contend that they were arbitrarily and unreasonably applied by the Association in the approval procedure herein. The question of whether the regulations were applied in an arbitrary and unreasonable manner was a factual determination. These issues were tried before the court on the testimony of numerous individuals. There was conflicting testimony subject to different interpretations and inferences. In construing the facts most favorably to the appellee/Association, the following appears. The condominium building in question was of a residential nature and was owner-occupied. There were no apartments held for investment and leased to nonowners. Contrary to the established pattern the appellants did not intend to occupy their apartment for the first four or five years of ownership. Instead, appellants intended to rent the apartment during this period because they could not afford the mortgage obligation on the apartment and the other financial obligations which they had outside the State of Florida. Appellants owned a home and a business in the North, were not ready to retire, and did not intend to occupy the condominium unit as their residence for a number of years, if at all. There was evidence that they wanted the apartment merely as a hedge against inflation with the rental income to be offset against the mortgage. Mr. Lyons indicated he would like to find a long term tenant during the first 5 years who "would be like a resident." Mr. Lyons assured the screening committee he would not need the unit even for brief vacation periods because his brother-in-law owned an apartment at another location in Florida which he would use for vacations. There was also conflicting evidence indicating that the unit was being purchased only as an investment. The Association refused the application to purchase for these reasons.
The trial consisted of a detailed review of exactly how and why the rejection of appellants occurred. It was appellants' contention that they should have been allowed to purchase the condominium despite the fact they intended to lease it and not occupy it. Appellants assert that since the Condominium Association also had the right under the documents to disapprove prospective tenants and lease arrangements, that the Association was being unreasonable in rejecting them as purchasers. In other words, the condominium documents anticipated leasing and the approval of lessees would have been sufficient protection to the Condominium Association. We do not accept this argument.
Much of the testimony related to the residential nature of this particular condominium. During the ten years that the *968 Plaza East had been occupied, there had been only five applications for approval of leases, four of which were approved. Of these four leases which were approved, two involved separate unit owners, each of whom desired to sell their units but were unable to do so because of a depressed real estate market at the time. The Association's approval of these two leases was based on this particular hardship. The other two approved leases concerned the same units and the same lessees with the second leases being merely renewals. There were no units held by an absent landlord solely for rental purposes. Substantial evidence indicated difficulty with tenants who would have no ownership interest in the building. Construing the evidence in favor of appellees, the purchase of the unit may have been an investment only, and one which was beyond the financial ability of appellants. We recognize that appellants offered to purchase for cash, by the time of trial, but this later change in financial position was irrelevant.
Under all of these circumstances, we cannot say that the trial judge erred as a matter of law when he reached the factual conclusion that the Association did not act in an arbitrary and unreasonable manner in applying the approval provisions of the documents.
Under the declaration, the Association, upon disapproval of a proposed sale, had to provide a purchaser within thirty days or the sale would be deemed approved. Stricter limitations upon leasing of condominium units were held not an unreasonable restraint on alienation in Seagate Condominium Association v. Duffy, 330 So.2d 484 (Fla. 4th DCA 1976). Further, rights of first refusal in a condominium context have generally been held proper. Chianese v. Culley, 397 F. Supp. 1344 (S.D.Fla. 1975). As the Florida Supreme Court stated in White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla. 1979), "reasonable restrictions concerning use, occupancy and transfer of condominium units are necessary for the operation and protection of the owners in the condominium concept." The trial court's order, which was basically a factual determination, is affirmed. Although not specifically addressed on appeal, we note but do not decide the issue as to whether the plaintiffs herein had standing to assert this cause of action. In Backus v. Smith, 364 So.2d 786 (Fla.1st DCA 1978), it was held that prospective purchasers of a condominium had no standing to challenge the failure of the condominium association to abide by certain procedural requirements of the declaration in exercising the association's right of first refusal. The trial court's judgment herein was not based on standing which issue was not raised below. We thus conclude appellants' standing to sue was waived and we do not decide the issue. Cowart v. City of West Palm Beach, 255 So.2d 673 (Fla. 1971).
AFFIRMED.
MOORE, J., concurs.
HURLEY, J., dissents with opinion.
HURLEY, Judge, dissenting.
The guiding principle for this case was set down by the Supreme Court in White Egret Condominium, Inc. v. Franklin, 379 So.2d 346, 350 (Fla. 1979), when it held that "a condominium restriction or limitation ... may be enforced if it serves a legitimate purpose and is reasonably applied." Here the restriction is one which requires condominium board approval of all unit sales. Appellants do not contest its legitimacy, but claim it was unreasonably applied when the board of directors arbitrarily and capriciously withheld its approval. I agree.
"Reasonableness" implies the exercise of sound discretion; it is not a code word for impermissibly restrictive, arbitrary or capricious behavior. We spoke to this issue in Hidden Harbour Estates, Inc. v. Norman, 309 So.2d 180 (Fla.4th DCA 1975), when we discussed the legitimate scope of association action and said:
... the association is not at liberty to adopt arbitrary or capricious rules bearing no relationship to the health, happiness and enjoyment of life of the various unit owners. On the contrary, we believe *969 the test is reasonableness. If a rule is reasonable the association can adopt it; if not, it cannot. Id. at 182.
Likewise, action by a condominium board of directors must be reasonable. White Egret Condominium, Inc. v. Franklin, supra; Hidden Harbour Estates, Inc. v. Basso, 393 So.2d 637 (Fla.4th DCA 1981). Indeed, this is the operative principle of today's majority decision. Nonetheless, I find the court's analysis incomplete since it fails to consider a second crucial corollary which circumscribes all board action: the declaration of condominium and the by-laws of the association delimit the scope of authority for a board of directors. This rule of limitation is rooted in the fact that "condominium unit owners comprise a little democratic sub society," Hidden Harbour Estates, Inc. v. Norman, supra at 182, which is authorized by statute to amend its declaration of condominium (the constitution of the condominium), and to enact by-laws for its self-governance. See Sections 718.110 and 718.112, Florida Statutes (1979). In other words, the will of the unit owners is paramount and the directors are charged with a fiduciary duty to implement it. See Section 718.111(1), Florida Statutes (1979). Therefore, "reasonable board action" is that which is consistent with the declaration and by-laws. Put another way, board action is per se unreasonable if it contravenes the democratically-expressed will of the unit owners as contained in the declaration and by-laws.
A hypothetical example may be helpful in illustrating this point. Imagine a provision in a declaration of condominium or by-laws which expressly permits children to reside in the condominium. Imagine, further, that the condominium has a sale-approval clause similar to that in the case at bar. To complete the scenario, assume that a couple with a child applies for board approval only to find that a majority of the board disfavors children on the premises and, therefore, disapproves the sale solely because of the child. Such action, in my view, would be per se unreasonable for it constitutes a silent amendment or negation of an express policy of the association's membership.
So too in the case at bar. The declaration of condominium for Plaza East Condominium expressly permits unit owners to lease their apartments subject to prior approval by the board of directors. The rules and regulations (by-laws) of the association further define conditions for leasing:
a. Owners may lease their apartment only once during the calendar year, these leases to be for no less than (6) months duration, nor more than one year. The lease may be renewed.
b. Lease arrangements must be submitted to the Board of Directors for approval. A maximum charge of $50.00 will be made for investigation of proposed Lessee.
c. Each Owner is responsible to acquaint the Lessee with the Rules, and the Owner is responsible for the Lessee's compliance with the Rules.
d. Owner will be held responsible for any damage to common elements caused by Lessee.
Since the declaration and by-laws guarantee a conditional right to lease, it is my view that the board of directors acted arbitrarily and unreasonably when it disapproved appellants' application solely because they intended to exercise this conditional right.
An underlying premise of the majority's opinion is that "[t]here was conflicting testimony [below which was] subject to different interpretations and inferences." Ante at 967. In other words, the court suggests that there are several factors which may be deduced from the evidence and which, if relied upon by the board, would justify its action. The fault with this theory, however, is that it was rejected by its beneficiaries. The board's trial counsel and all of the members of the board who testified stated unequivocally that appellants' intent to lease was the sole ground for their rejection.
In his opening statement, the board's trial counsel told the court, "There has never been an apartment purchased for the purpose of rental and this is the basis  the *970 main basis why the screening committee and the Board of Directors rejected them." (Tr. 5). Four members of the board of directors  three of whom comprised the screening committee  testified at trial. The following exemplifies their testimony. Mr. James H. Carpenter: "The Board rejected the application... . The reason was that they did not look with favor upon the rental of an apartment for that period of time... . That's the only reason I know of." (Tr. 29). Mr. Maurice Henry: "My  I voted against it... . Because they wanted to either rent or lease the apartment." (Tr. 40).[1] Mr. Nicholas LaRosa: "We had it in their file that they were financially able... . [The fact they were going to lease it for five years] was the only reason I was in doubt of it." (R. 397). Mr. Donald King: "The reason [for rejection] was the same one that we've been going over and over, which is that they were rejected because they intended to lease the apartment... ." (Tr. 66-67).
The record admits no other inference and so, I submit, we are compelled to evaluate the board's action on the basis of its expressed rationale. Appellants were disapproved solely because they intended to lease the unit. Since the rules and regulations (by-laws) expressly contemplated yearly rentals which, if approved, could be renewed, the board's disapproval was unreasonable because it negated the availability of a conditional right established by the membership of the condominium association.
As for appellants' standing, I concur with the court that appellee waived this issue by failing to object in the trial court. Cowart v. City of West Palm Beach, 255 So.2d 673 (Fla. 1971). Moreover, I am persuaded that by virtue of the sale-approval clause in the declaration of condominium and by-laws, the board became a necessary party to all sale contracts and, consequently, in my opinion, it could not successfully assert lack of standing to shield itself from suit by a prospective purchaser.
Accordingly, I respectfully dissent.
NOTES
[1] Mr. Henry also gave the following answers to these questions:

Q. Did you have any problem at all with their financial responsibility?
A. None, as I recall.
Q. Any problems at all with their social compatibility?
A. None at all.
Q. And you opposed them because they were going to be  they were not going to be full-time residents of the Plaza East Condominium?
A. Basically, that they were going to lease it. (Tr. 43).