448 So.2d 1166 (1984)
AQUARIAN FOUNDATION, INC., a Foreign Non-Profit Corporation, Appellant,
v.
SHOLOM HOUSE, INC., a Florida Corporation, Appellee.
No. 82-2016.
District Court of Appeal of Florida, Third District.
April 17, 1984.
Gerald E. Rosser, Miami, for appellant.
Gus Efthimiou, Jr., Miami, for appellee.
Before HENDRY, NESBITT and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
All is not peaceful at the Sholom House Condominium. In disregard of a provision of the declaration of condominium requiring *1167 the written consent of the condominium association's board of directors to any sale, lease, assignment or transfer of a unit owner's interest, Bertha Albares, a member of the board of directors, sold her condominium unit to the Aquarian Foundation, Inc. without obtaining such consent. Eschewing its right to ratify the sale, the association, expressly empowered by the declaration to "arbitrarily, capriciously, or unreasonably" withhold its consent, sued to set aside the conveyance, to dispossess Aquarian, and to recover damages under a clause in the declaration which provides that:
"In the event of a violation by the condominium [sic] by the unit owner of any of the covenants, restrictions and limitations, contained in this declaration, then in that event the fee simple title to the condominium parcel shall immediately revert to the association, subject to the association paying to said former unit owner, the fair appraised value thereof, at the time of reversion, to be determined as herein provided."
The trial court, after a non-jury trial, found that Albares had violated the declaration of condominium, thus triggering the reverter clause. Accordingly, it entered a judgment for the association, declaring the conveyance to Aquarian null and void, ejecting Aquarian, and retaining jurisdiction to award damages, attorneys' fees and costs after a determination of the fair appraised value of the property. Aquarian appeals. We reverse.
The issue presented by this appeal is whether the power vested in the association to arbitrarily, capriciously, or unreasonably withhold its consent to transfer[1] constitutes an unreasonable restraint on alienation, notwithstanding the above-quoted reverter clause which mandates that the association compensate the unit owner in the event, in this case, of a transfer of the unit in violation of the consent requirement.
It is well settled that increased controls and limitations upon the rights of unit owners to transfer their property are necessary concomitants of condominium living.[2]See Hidden Harbour Estates, Inc. v. Norman, 309 So.2d 180 (Fla. 4th DCA 1975); Holiday Out in America at St. Lucie, Inc. v. Bowes, 285 So.2d 63 (Fla. 4th DCA 1973); Chianese v. Culley, 397 F. Supp. 1344 (S.D.Fla. 1975).
"[I]nherent in the condominium concept is the principle that to promote the health, happiness, and peace of mind of the majority of the unit owners since they are living in such close proximity and using facilities in common, each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property. Condominium unit owners comprise a little democratic sub society of necessity more restrictive as it pertains to use of condominium property than may be existent outside the condominium organization."

Hidden Harbour Estates, Inc. v. Norman, 309 So.2d at 181-82.
Accordingly, restrictions on a unit owner's right to transfer his property are recognized as a valid means of insuring the association's ability to control the composition of the condominium as a whole. See, e.g., Lyons v. King, 397 So.2d 964 (Fla. 4th DCA 1981); Coquina Club, Inc. v. Mantz, 342 So.2d 112 (Fla. 2d DCA 1977); Seagate *1168 Condominium Association, Inc. v. Duffy, 330 So.2d 484 (Fla. 4th DCA 1976); Kroop v. Caravelle Condominium, Inc., 323 So.2d 307 (Fla. 3d DCA 1975); Holiday Out in America at St. Lucie, Inc. v. Bowes, 285 So.2d 63; Chianese v. Culley, 397 F. Supp. 1344. See also White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla. 1980). Indeed, it has been said of a restriction contained in a declaration of condominium that it "may have a certain degree of unreasonableness to it, and yet withstand attack in the courts. If it were otherwise, a unit owner could not rely on the restrictions found in the declaration of condominium, since such restrictions would be in a potential condition of continuous flux."[3]Hidden Harbour Estates, Inc. v. Basso, 393 So.2d 637, 640 (Fla. 4th DCA 1981). Thus, strict enforcement of the restrictions of an association's private constitution, that is, its declaration of condominium, protects the members' reliance interests in a document which they have knowingly accepted, and accomplishes the desirable goal of "allowing the establishment of, and subsequently protecting the integrity of, diverse types of private residential communities, [thus providing] genuine choice among a range of stable living arrangements." Ellickson, Cities and Homeowners Associations, 130 U.Pa. L.Rev. 1519, 1527 (1982).
However, despite the law's recognition of the particular desirability of restrictions on the right to transfer in the context of condominium living, such restrictions will be invalidated when found to violate some external public policy or constitutional right of the individual. Hidden Harbour Estates, Inc. v. Basso, 393 So.2d at 639-40. See Pepe v. Whispering Sands Condominium Association, Inc., 351 So.2d 755 (Fla. 2d DCA 1977). Merely because a declaration of condominium is in the nature of a private compact and a restriction contained therein is not subject to the same reasonableness requirement as a restriction contained in a public regulation, see White Egret Condominium, Inc. v. Franklin, 379 So.2d 346, 350 (Fla. 1980), where the restriction constitutes a restraint on alienation, condominium associations are not immune from the requirement that the restraint be reasonable. Thus, while a condominium association's board of directors has considerable latitude in withholding its consent to a unit owner's transfer, the resulting restraint on alienation must be reasonable. In this manner the balance between the right of the association to maintain its homogeneity and the right of the individual to alienate his property is struck.
The basic premise of the public policy rule against unreasonable restraints on alienation, see 7 Thompson On Real Property, § 3161 (1962); 31 C.J.S. Estates 8(b)(2) (1964), is that free alienability of property fosters economic growth and commercial development. Davis v. Geyer, 151 Fla. 362, 9 So.2d 727 (1942); Seagate Condominium Association, Inc. v. Duffy, 330 So.2d 484. Because "[t]he validity or invalidity of a restraint depends upon its long-term effect on the improvement and marketability of the property," Iglehart v. Phillips, 383 So.2d 610, 614 (Fla. 1980), where the restraint, for whatever duration, does not impede the improvement of the property or its marketability, it is not illegal. Id. at 615. Accordingly, where a restraint on alienation, no matter how absolute and encompassing, is conditioned upon the restrainer's obligation to purchase the property at the then fair market value, the *1169 restraint is valid. Id. at 614-15, and cases collected.
The declaration of condominium in the present case permits the association to reject perpetually any unit owner's prospective purchaser for any or no reason. Such a provision, so obviously an absolute restraint on alienation, can be saved from invalidity only if the association has a corresponding obligation to purchase or procure a purchaser for the property from the unit owner at its fair market value. Otherwise stated, if, as here, the association is empowered to act arbitrarily, capriciously, and unreasonably in rejecting a unit owner's prospective purchaser, it must in turn be accountable to the unit owner by offering payment or a substitute market for the property. When this accountability exists, even an absolute and perpetual restraint on the unit owner's ability to select a purchaser is lawful. See Chianese v. Culley, 397 F. Supp. 1344 (notwithstanding association's right to approve any transfer except one to an existing unit owner, requirement that within sixty days association provide another purchaser or approve original purchaser creates a preemptive right in association and saves declaration of condominium from being an unlawful restraint on alienation).[4]
The declaration of condominium involved in the instant case contains no language requiring the association to provide another purchaser, purchase the property from the unit owner, or, failing either of these, approve the proposed transfer. What it does contain is the reverter clause, which the association contends is the functional equivalent of a preemptive right and, as such, makes the restraint on alienation lawful.
In our view, the problem with the association's position is that the reverter clause imposes no obligation upon the association to compensate the unit owner within a reasonable time after the association withholds its consent to transfer, and the clause is not therefore the functional equivalent of a preemptive right. Cf. Chianese v. Culley, 397 F. Supp. 1344. Instead, the clause and the association's obligation do not come into effect until a violation of the restriction on an unapproved transfer occurs:
"In the event of a violation by the condominium [sic] by the unit owner of any of the covenants, restrictions and limitations, contained in this declaration, then in that event the fee simple title to the condominium parcel shall immediately revert to the association, subject to the association paying to said former unit owner, the fair appraised value thereof, at the time of reversion, to be determined as herein provided."
The association's accountability to the unit owner is illusory. There is no reasonable likelihood that a potential purchaser, apprised by the condominium documents that the consent of the association is required and that a purchase without consent vitiates the sale, would be willing to acquire the property without the association's consent.[5] Without a sale, there is no violation of the reverter clause. Without a violation of the reverter clause, the association has no obligation to pay the unit owner.
*1170 Effectively, then, the power of the association to arbitrarily, capriciously, and unreasonably withhold its consent to transfer prevents the activation of the reverter clause and eliminates the accountability of the association to the unit owner. Therefore, we conclude that the power of the association to arbitrarily, capriciously, and unreasonably withhold its consent to transfer is not saved by the reverter clause from being declared an invalid and unenforceable restraint on alienation. Accordingly, the judgment of the trial court is
Reversed.
NOTES
[1] The appellant does not challenge the clause itself as not serving the arguably legitimate purpose of screening out undesirable prospective transferees, as lacking in clarity, or as permitting arbitrary, capricious, or unreasonable action by the directors in contravention of the purpose to be served. The appellant's point on appeal is that the invalidity of the clause lies not in its potential for unfair application, but rather in the fact that it is an unreasonable restraint on alienation.
[2] The principle that the use of condominium property can be burdened with restrictions has received legislative sanction. See § 718.104(5), Fla. Stat. (Supp. 1982) (providing that a declaration of condominium "may include covenants and restrictions concerning the use, occupancy, and transfer of the units permitted by law with reference to real property.").
[3] On the other hand, post-formative actions of the association, such as rules promulgated by the board of directors, are subject to a test of reasonableness: that is, the board's actions must be reasonably related to the promotion of the health, happiness and peace of mind of the unit owners. Hidden Harbour Estates, Inc. v. Basso, 393 So.2d 637, 640 (Fla. 4th DCA 1981). It has been noted that cases applying this same reasonableness test to a restriction contained in the declaration of condominium, see, e.g., Seagate Condominium Ass'n, Inc. v. Duffy, 330 So.2d 484 (Fla. 4th DCA 1976), overlook the fact that a restriction appearing in a declaration of condominium owes its "very strong presumption of validity ... [to] the fact that each individual unit owner purchases his unit knowing of and accepting the restrictions to be imposed." Hidden Harbour Estates, Inc. v. Basso, 393 So.2d at 639.
[4] Similar provisions in Lyons v. King, 397 So.2d 964, and Coquina Club, Inc. v. Mantz, 342 So.2d 112, presumably would have been held to be lawful restraints on alienation had the question been reached. However, in each of these cases, it was held that the rejection of the prospective purchaser was based on a reasonable and narrow restriction on transfer, enabling the unit owner to alienate the property to others who were not within the restriction. Thus, the preemptive right of the association was not triggered.
[5] We acknowledge, of course, that in this case a sale to Aquarian Foundation actually occurred. This does not, however, affect our view that such a sale would not ordinarily be expected to occur between parties dealing at arm's length. The record does not reflect the relationship between Albares and Aquarian that may have been responsible for Aquarian acquiring the property. We can conceive of situations where parties could collude to effect a sale so as to create a violation and trigger the reverter clause. But the fact that this sale occurred hardly is evidence that other sales can be reasonably expected to occur.