994 So.2d 367 (2008)
Daniel E. WEBSTER, et al., Appellants,
v.
OCEAN REEF COMMUNITY ASSOCIATION, INC., etc., Appellee.
No. 3D08-327.
District Court of Appeal of Florida, Third District.
September 24, 2008.
Gregory R. Beck and Lisa M. Rothman and Jason H. Haber, Fort Lauderdale, for appellants.
Eisinger, Brown, Lewis & Frankel and David S. Chaiet and Melissa Groisman, Hollywood, for appellee.
Before WELLS, ROTHENBERG, and SALTER, JJ.
*368 SALTER, J.
Daniel E. Webster, his wife Mollie, and his mother, Anita V. Sculthorpe, appeal a final summary judgment entered by the circuit court in favor of Ocean Reef Community Association, Inc., a homeowners' association.[1] The issue presented is whether either of two transfers of a home in the Ocean Reef community in Key Largo, Florida, violated the Association's governing documents. Finding that the governing documents did not prohibit either of the two intra-family transfers, we reverse the judgment below.

Background
Ms. Sculthorpe and her late husband bought a home at Ocean Reef in 1967. Her husband passed away in 1989, and Ms. Sculthorpe then became the sole titleholder. In early 2000, Ms. Sculthorpe created an irrevocable qualified personal residence trust (the "Trust") and quitclaimed the Ocean Reef residence to the Trust.[2] Under the terms of the Trust, Ms. Sculthorpe was the sole beneficiary of the Trust (and was thus entitled to the use of the home) until the first to occur of her death or the fifth anniversary of the commencement of the Trust. At the end of that term, the sole beneficiary of the Trust became Mr. Webster.[3]
In May 2005, following the expiration of Ms. Sculthorpe's five-year term as beneficiary, the Trust quitclaimed the home to Mr. Webster. That deed was then recorded. By then, Ms. Sculthorpe was ninety years old, and the Websters were continuously residing in the home with her.
Although the record indicates there may have been other sources of friction as well,[4] the dust-up that triggered the declaratory judgment below was the Association's position that the two transfers (Ms. Sculthorpe to the Trust in 2000, and the Trust to Mr. Webster in 2005) were required to be submitted to the Association for review and approval or rejection in accordance with the Association's governing documents. When Mr. and Mrs. Webster submitted an application, they were rejected by the Association. They then retained counsel and commenced the circuit court lawsuit for declaratory relief and damages.

Analysis
Our review is de novo, because the final summary judgment was based on the application of the Association's governing documents to the two transfers that culminated in Mr. Webster's ownership and possession of the home. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130-31 (Fla.2000). Those governing *369 documents are considered a contract between the Association and the homeowners bound by the documents. Thomas v. Vision I Homeowners Ass'n, 981 So.2d 1 (Fla. 4th DCA 2007).
The Association's governing documents in the 1997 member handbook are relied upon by the parties with regard to the 2000 transfer by Ms. Sculthorpe to the Trust. The parties rely on a 2002 version of those documents for analysis of the 2005 transfer from the Trust to Mr. Webster. The pertinent provisions of the 1997 documents[5] are:
1. Section 3.1(b) of the Association's articles of incorporation states in pertinent part that each person owning one or more Lots shall be a Class B member of the Association.
2. Section 3.2, "Admission to Membership of Class B Members," provides that the Board of Directors is to appoint a membership committee to examine and review applications for membership and make recommendations to the Board. It states that "[a]ll Class B Members shall be admitted to membership only by a majority vote of the Board of Directors or the Executive Committee of the Board, except as provided under Section 3.5 hereof." Section 3.2 next provides that "[a]pproval of a Lot purchaser[6] as a member of the Association is a condition to the conveyance of a Lot to such purchaser, and any attempted conveyance made without Association approval shall be a violation of these Articles, the By-laws of the Association, the Rules and Regulations of the Association, and any and all other documents governing the Ocean Reef Complex." Addressing the Association's right of first refusal and obligation to purchase a lot under certain conditions, Section 3.2 also states that "the Association shall have the absolute right to deny approval of any sale without being obligated to purchase the Lot if ... [certain conditions occur]."
Section 3.2 also carves out certain exceptions; the provision does not apply to any sale of any Lot by "the owner thereof to his spouse, adult children, parents or a trustee corporation or other entity where the owner or the aforementioned related persons are and continue to be the sole beneficiary or equity owner...." That section also provides that any owner may freely "convey or transfer his Lot by will, or ... have his Lot pass by intestacy, without restriction." In any of these situations, the succeeding owner is nonetheless to become bound by Section 3.2.
3. The last section affecting our analysis is Section 3.4 of the Association's articles, a right of first refusal reserved to the Association "for the purchase and lease of Lots which is completely separate from and in addition to the Association's right to approve any attempted sale, lease, or transfer as set forth in Paragraph [sic] 3.2 hereof." Section 3.4 specifies that "[t]he Association shall not be required to exercise its right-of-first refusal if a purchaser or tenant is otherwise disapproved for membership as set forth in Section 3.2 hereof." Section 3.4 expressly does not apply to "any sale or conveyance of any Lot by the owner to his [sic] spouse, adult children, parents or a trustee ... where the owner or the aforementioned related persons are and continue to be the sole beneficiary ..." and to a conveyance or transfer by will or intestacy.[7]
*370 As a homeowner's association and corporation, the Association "may not act in any way not authorized in its articles of incorporation or bylaws." S & T Anchorage, Inc. v. Lewis, 575 So.2d 696, 698 (Fla. 3d DCA 1991). In the case of competing interpretations of the words used in the articles of incorporation at issue here, any ambiguity is to be construed against the Association as the drafter. Vargas v. Schweitzer-Ramras, 878 So.2d 415, 417 (Fla. 3d DCA 2004). Additionally, Florida public policy disfavors unreasonable restrictions on the free alienability of property. "[W]here a restraint on alienation, no matter how absolute and encompassing, is conditioned upon the restrainer's obligation to purchase the property at the then fair market value, the restraint is valid." Aquarian Found., Inc. v. Sholom House, Inc., 448 So.2d 1166, 1168-69 (Fla. 3d DCA 1984) (reversing judgment for condominium association asserting a right under its governing documents to reject any unit owner's prospective purchaser for any reason or no reason) (citations omitted).[8] Conversely, where a restraint is absolute and may be exercised for any reason or no reason, but provides no such protection for an owner, the restriction may not be enforceable.
The two transfers involved in this case were giftsnot sales, purchases, or leases. Ms. Sculthorpe wisely arranged her affairs while living, and she simply chose a residential trust and inter vivos transfers rather than a testamentary transfer. The ordinary meanings of "sale" and "purchase" signify transfers of ownership for a price paid in money or other valuable consideration. A gift, on the other hand, involves a transfer based on a donor's disinterested generosity and not an exchange for value. The Association's governing documents clearly impose a membership application process for the sale, purchase, and lease of lots within Ocean Reef, and they clearly do not impose such requirements for the gift of a lot. Were we to construe "sale" or "purchase" to include Ms. Sculthorpe's transfer and her residential trust's transfer, the Association would have a right of first refusal to acquire the residence for nothing, nada, zero. We will not construe the documents to produce an absurd result.
When Section 3.2 describes the application for membership, it states that "[a]pproval of a Lot purchaser as a Member of the Association is a condition to the conveyance of a Lot to such purchaser, and any attempted conveyance made without Association approval shall be a violation." (emphasis added). The introductory phrase qualifies the consequence applicable to "any attempted conveyance," and the sentence as a whole does not inform a lot owner or prospective donee that the owner may not make a gift of the property to an adult child without applying to the Association and obtaining approval.
If this is what the Association ultimately intends, lawyers can surely find the language that will allow the Association to disapprove the inter vivos gift of a home by an owner to an adult child who happens to be an organized crime figure or terrorist. At present, however, that language is missing.[9]

*371 Conclusion

The governing documents do not include any provision expressly requiring a doneeas opposed to a purchaser or specified category of lesseeto apply for and obtain approval as a member of the Association before taking title. Accordingly, the donative transfers by Ms. Sculthorpe to the Trust and by the Trust to Mr. Webster were and are valid despite the contrary views of the Association membership committee. The summary judgment in favor of the Association, and the denial of the motion for summary judgment in favor of Ms. Sculthorpe and Mr. and Mrs. Webster, are reversed. The case is remanded for the entry of summary judgment in favor of the appellants and for such further proceedings as may be consistent with this opinion.
Final judgment reversed and remanded.
NOTES
[1] The parties filed cross motions for summary judgment, each alleging that there was no genuine issue of material fact. The circuit court's final judgment granted the Association's motion and denied the cross motion filed by the Websters and Ms. Sculthorpe.
[2] At the time these documents were executed, Ms. Sculthorpe was eighty-four. The quitclaim deed recited a nominal consideration. Ms. Sculthorpe filed a gift tax return and paid tax as a result of the gift of the remainder interest transferred via the trust to her son, Mr. Webster.
[3] Mr. Webster's heirs or estate would have become sole beneficiary at the end of the initial term had he died before that period expired.
[4] The membership committee rejected without explanation an application by Mr. Webster, an honorably discharged Vietnam combat veteran and Army officer, never convicted of a crime, with graduate degrees from Columbia and Harvard, requesting permission to accept the gift of a residence by his elderly mother who had owned the property for over thirty years (an application submitted even though Mr. Webster did not believe such an application was required). The record does not explain how or why this matter got to such an impasse.
[5] The 2002 version of the articles is slightly different, but the changes do not affect our analysis.
[6] Terms appearing in bold in this opinion are intended for emphasis here rather than in the original text.
[7] The 2002 version of this language removed "adult children" and "parents" from the exception. If we accepted the Association's interpretation of the articles, which we do not, this change would have the effect of making the right of first refusal become applicable to an owner's gift of a residence to the owner's adult child or parents.
[8] This citation requires a tribute to the author of the opinion, the late Judge Daniel Pearson, who began: "All is not peaceful at the Sholom House Condominium." Id. at 1166
[9] If this is indeed the Association's intention, it is hard to understand why the restrictions would not also be drafted to apply to a testamentary devise of the property to the criminal or terrorist.