379 So.2d 346 (1979)
WHITE EGRET CONDOMINIUM, INC., Appellant, Petitioner,
v.
Marvin FRANKLIN et al., Appellees, Respondents.
No. 54519.
Supreme Court of Florida.
December 13, 1979.
Rehearing Denied February 19, 1980.
*347 Welcom H. Watson, Jr., and Michael K. Davis of Watson, Hubert & Davis, Fort Lauderdale, for appellant, petitioner.
James G. Kincaid, Fort Lauderdale, for appellees, respondents.
Gerald W. Pierce of Henderson, Franklin, Starnes & Holt, Fort Myers, for Leisure Technology of Florida, Inc., amicus curiae.
Ralph H. Haben, Jr., Palmetto, for Florida Apartment Ass'n, amicus curiae.
Mark B. Schorr of Becker, Poliakoff & Streitfeld, Fort Lauderdale, for amicus curiae.
OVERTON, Justice.
This case is before this Court on direct appeal and on petition for writ of certiorari from the decision of the Fourth District Court of Appeal reported at 358 So.2d 1084 (Fla. 4th DCA 1978). The district court construed provisions of the United States Constitution in determining the constitutionality of an express covenant in a condominium agreement which prohibited children under the age of twelve from residing in the condominium premises. In addition, the decision of the district court fails to harmonize with portions of Coquina Club, Inc. v. Mantz, 342 So.2d 112 (Fla. 2d DCA 1977), and Hidden Harbor Estates, Inc. v. *348 Norman, 309 So.2d 180 (Fla. 4th DCA 1975). We have jurisdiction.[1]
The principal issue is whether a condominium agreement containing a restriction against residency by children under the age of twelve violates a condominium purchaser's constitutional rights to marriage, procreation, and association, and his right to equal protection of the laws. We find such a restriction is not constitutionally prohibited unless unreasonably or arbitrarily applied. We disagree with the district court's holding that the restriction was unreasonable "per se" and unconstitutional. We do agree, however, that the condominium restriction in the instant case was arbitrarily and selectively applied, and therefore we approve the result.
The recency of the condominium concept, its dependency upon certain use and occupancy restrictions and rules, and the substantial development of retirement communities in this state necessitate a full discussion of this issue.
Two brothers, Marvin Franklin and Norman Franklin, sought to acquire a condominium apartment as a joint vacation home for their respective families when they visited Florida. Although they intended to have dual ownership of this condominium, only one brother's family at a time would be using the apartment. Both brothers filed application for ownership, but only Marvin's application had been approved at the time of the closing. The record reflects that at the closing Norman Franklin's application could not be found. The apartment was conveyed to Marvin Franklin who then transferred one-half ownership to Norman. Ten months after the conveyance, White Egret Condominium, Inc., the condominium association, sought to set aside the transfer of the ownership interest from Marvin to Norman on the grounds that: (1) the defendant, Norman Franklin, had minor children in violation of the restriction which did not allow any children under twelve years of age to reside on the premises, and (2) permitting two brothers and their respective families to occupy and own the premises violated the restriction which did not permit the use of the apartment for any purpose other than as a "single family residence."
The condominium agreement did not define the phrase "single family residence." The agreement did provide that membership could be held in more than one owner's name and that an apartment could be transferred to a member of the "immediate family." In addition, the condominium association conceded that where other requirements and restrictions were satisfied, the owner did not need the association's approval to convey a fee simple interest in the apartment to a brother. The record further reveals that six children under the age of twelve were residents of White Egret Condominium.
In entering its final judgment, the trial court directed Norman to reconvey title of his one-half ownership interest to his brother, Marvin, because said conveyance from one brother to another brother was "void and contrary to the declaration of condominium and other documents related thereto which limit ownership in condominium apartments in White Egret Condominium to a single family." This was the sole ground for the trial court's judgment. The final judgment was not based on the fact that Norman had minor children under the age of twelve, contrary to the condominium declaration.
The district court reversed the trial court's judgment, holding: (1) that the restriction against children under the age of twelve was an unconstitutional violation of the rights to marriage, procreation, and association, and of the right to equal protection of the laws; (2) that the restriction was unreasonable because the condominium association selectively and arbitrarily enforced its application; and (3) that the restriction against the use of the apartment for purposes other than as a single family residence was not violated because the two brothers and their families alternated their stays in the apartment.

*349 Constitutionality of Age Restrictions or Limitations

In holding that the restriction violated an owner's constitutional rights, the district court primarily relied upon three United States Supreme Court decisions: (1) Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (holding unconstitutional a statute prohibiting a white person from marrying anyone but a white person); (2) Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (holding unconstitutional a statute prohibiting use and distribution of contraceptives); and (3) Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (holding unconstitutional a statute requiring sterilization of habitual criminals). In our view, the district court's reliance on these cases was misplaced and not a proper interpretation of them.
The limitation on use of property by requiring single dwelling units and single family use has received constitutional support. In Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), the United States Supreme Court considered the constitutionality of a zoning ordinance which restricted land use to one family dwellings. Family was defined to mean any number of persons related by blood, adoption, or marriage, or not more than two unrelated persons living as a single housekeeping unit. The majority opinion held that this restriction violated no fundamental right, such as the right of association or privacy. The court found the restriction reasonable and rationally related to a permissible state objective, and therefore held it did not violate equal protection. Referring to this ordinance having an appropriate purpose, the court stated:
A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. This goal is a permissible one within Berman v. Parker, [348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27] supra. The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.
Id. at 9, 94 S.Ct. at 1541.
On the other hand, there have been cases holding that property and family limitations in zoning ordinances violate constitutional rights. In Moore v. City of East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), Mrs. Moore lived in her home with her son and two grandsons who were cousins rather than brothers. A housing ordinance selected categories of relatives who may live together and others who may not, making failure to comply a criminal penalty. Mrs. Moore received a notice of violation from the city stating that one grandson was "an illegal occupant" and directing her to comply with the ordinance. When she failed to remove her grandson from her home, the city filed a criminal charge. A motion to dismiss was denied, and Mrs. Moore was convicted and sentenced to five days in jail and a $25 fine. The United States Supreme Court held that the ordinance could not be justified as serving the city's interests of preventing overcrowding and minimizing traffic and parking congestion. The court further held that the substantive due process right to live together as a family was not confined to the nuclear family, since the constitution's protection of the sanctity of the family was deeply rooted in the nation's history and tradition and since such tradition was not limited to respect for the bonds uniting the members of the nuclear family but extended as well to the sharing of their household with uncles, aunts, cousins, and especially grandparents. A concurring opinion by Justice Stevens, whose vote was necessary for a decision, stated: "The city has failed to totally explain the need for a rule which would allow a homeowner to have two grandchildren live with her if they are brothers, but not if they are cousins." In Molino v. Mayor and Council of Glassboro, 116 N.J. Super. 195, 281 A.2d 401 (1971), a zoning ordinance had the effect of keeping children out of the city for the admitted purpose of avoiding taxes and more schools. *350 The court held the ordinance violative of the equal protection clause. A review of the facts in both Moore and Molino clearly establishes an unreasonable and arbitrary application of the governmental police power.
In the instant case, the restriction is not a zoning ordinance adopted under the police power but rather a mutual agreement entered into by all condominium apartment owners of the complex. With this type of land use restriction, an individual can choose at the time of purchase whether to sign an agreement with these restrictions or limitations. Reasonable restrictions concerning use, occupancy, and transfer of condominium units are necessary for the operation and protection of the owners in the condominium concept.
In Hidden Harbor Estates, Inc. v. Norman, 309 So.2d 180, 181-82 (Fla. 4th DCA 1975), Judge Downey explained the necessity for restrictions on condominium living:
It appears to us that inherent in the condominium concept is the principle that to promote the health, happiness, and peace of mind of the majority of the unit owners since they are living in such close proximity and using facilities in common, each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property. Condominium unit owners comprise a little democratic sub society of necessity more restrictive as it pertains to use of condominium property than may be existent outside the condominium organization.
In addition, the legislature of this state has expressly approved the allowance of reasonable restrictions on use and occupancy. See § 718.112(3), Fla. Stat. (1977). Therefore, it is our view that a condominium restriction or limitation does not inherently violate a fundamental right and may be enforced if it serves a legitimate purpose and is reasonably applied.
The issue of age restrictions in condominiums and housing developments is a new legal issue although it has recently been addressed by courts in other jurisdictions and referred to in two decisions of our district courts.[2] In Hidden Harbor Estates, Inc. v. Norman, the condominium association adopted a rule prohibiting the use of alcoholic beverages in certain areas of the common elements. A unit owner sought to enjoin the enforcement of the rule. The district court held that this was a reasonable rule, citing examples of other restrictions on individual rights which are necessary for the condominium concept: "[N]o sale may be effectuated without approval; no minors may be permanent residents; no pets are allowed." 309 So.2d at 182. The limitation on minors being permanent residents was quoted with apparent approval although it was not an issue in the cause. In Coquina Club v. Mantz, 342 So.2d 112 (Fla. 2d DCA 1977), the condominium board denied an application for the purchase of a unit by a family with two children under twelve years of age. Because of this denial, the unit owner sought to require the condominium to either purchase the unit or provide a purchaser for the apartment at his price. The district court noted that the condominium legislation in this state specifically allowed reasonable restrictions, and that age restrictions had withstood constitutional attack in other jurisdictions, citing Riley v. Stoves, 22 Ariz. App. 223, 526 P.2d 747 (1974). See Annot., 68 A.L.R.3d 1239 (1976).
In Riley the court upheld a covenant in a deed restricting occupancy in a mobile home subdivision to persons twenty-one years or older. The court stated: "The obvious purpose is to create a quiet, peaceful neighborhood by eliminating noise associated with children at play or otherwise." Id. at 228, 526 P.2d at 752. The court noted there were other areas in the mobile home park for families with children. The court therefore found this restriction reasonably related to a legitimate purpose and declined to hold that its enforcement violated the defendant's right to equal protection.
*351 In Ritchey v. Villa Nueva Condominium Ass'n., 81 Cal. App.3d 688, 146 Cal. Rptr. 695 (Ct.App. 1978), the issue before the court was the validity of a condominium bylaw restricting occupancy of condominium units to persons eighteen years of age or older. The court held that age restrictions in condominium documents were not unreasonable "per se," and that it was a reasonable restriction upon an owner's right to sell or lease his condominium unit.
We agree with these courts that age limitations or restrictions are reasonable means to accomplish the lawful purpose of providing appropriate facilities for the differing housing needs and desires of the varying age groups. We reject the view that Moore v. City of East Cleveland absolutely prohibits this type of limitation. We note that Congress has established age limitations in recognizing the need for senior citizen housing by including an age minimum of sixty-two years for occupancy of certain housing developments. See 12 U.S.C. § 1701, et seq. (1969); 42 U.S.C. § 3001, et seq. (1973); 12 U.S.C. § 1701q (d)(4) (Supp. 1979) (minimum age); and 42 U.S.C. § 1485 (a)(3) (1978).
The urbanization of this country requiring substantial portions of our population to live closer together coupled with the desire for varying types of family units and recreational activities have brought about new concepts in living accommodations. There are residential units designed specifically for young adults, for families with young children, and for senior citizens. The desires and demands of each category are different. Young adult units are predominantly one-bedroom units with extensive recreational facilities designed for the young, including tennis and racquet ball courts, weight rooms, saunas, and even disco rooms. The units designed principally for families are two- to four-bedroom units with recreational facilities geared for children, including playgrounds and small children's swimming pools. Senior citizen units are limited to one- and two-bedroom units designed to provide the quiet atmosphere that most of our senior citizens desire. These units may provide extra wide doors throughout the complex to allow sufficient clearance for wheelchairs and walkers and recreational facilities such as card rooms and shuffleboard courts. Although tennis courts and playgrounds may be desirable for younger tenants and owners, such facilities would be a waste of funds and be largely unused in a development which housed a substantial number of senior citizens. We cannot ignore the fact that some housing complexes are specifically designed for certain age groups. In our view, age restrictions are a reasonable means to identify and categorize the varying desires of our population. The law is now clear that a restriction on individual rights on the basis of age need not pass the "strict scrutiny" test, and therefore age is not a suspect classification. See Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). We do recognize, however, that these age restrictions cannot be used to unreasonably or arbitrarily restrict certain classes of individuals from obtaining desirable housing. Whenever an age restriction is attacked on due process or equal protection grounds, we find the test is: (1) whether the restriction under the particular circumstances of the case is reasonable, and (2) whether it is discriminatory, arbitrary, or oppressive in its application.
The totality of an age or family limitation in its application as it occurred in Morino v. New Jersey and Moore v. City of East Cleveland is clearly not present in the instant case. We further reject the view that Moore mandates that all related relatives must be allowed to live in whatever single family facilities they desire. Such an absolute rule would inversely prohibit those who desire to live in a facility without children from doing so.
In the instant case the subject premises were admittedly to be used as a vacation retreat rather than as a family's primary residential home. Regardless of that fact, however, we find the restriction against children under the age of twelve reasonably related to a lawful objective, but under the circumstances of this case the *352 selective and arbitrary manner of enforcement is another issue.

Selective and Arbitrary Enforcement
At the time Marvin Franklin purchased his condominium apartment, at least six other children under the age of twelve were living in this condominium complex. Further, the record reveals that the six children were in two separate households and that some of the children were substantially under the age of twelve. We agree with the district court's finding that this constituted unequal and arbitrary enforcement of the restriction. Although this restriction was reasonably related to a lawful objective, the appellant is estopped from selectively enforcing the age restriction. See Fifty-Six Sixty Collins Avenue Condominium, Inc. v. Dawson, 354 So.2d 432 (Fla. 3d DCA 1978), and Plaza Del Prado Condominium Ass'n., Inc. v. Richman, 345 So.2d 851 (Fla. 3d DCA 1977).

Single Family Use of the Condominium
The condominium agreement prohibited use of the condominium apartment for any purpose other than as a single family residence. The agreement, however, failed to define the term "single family residence" and expressly permitted ownership of an apartment by more than one individual. The district court found that when this undefined "single family residence" provision was read together with the joint ownership provision, the two sections were inconsistent and inherently ambiguous. As a result, the doubt must be resolved against the person claiming the right to enforce the covenant. Moore v. Stevens, 90 Fla. 879, 885, 106 So. 901, 904 (1925). The district court further noted that even assuming the two brothers and their respective families constitute two separate families, they used the apartment in a single family manner by alternating their visits to Florida. Only one brother and his family actually occupied the apartment at any given time, and this was in fact a single family use. We agree with these conclusions of the district court.
In addressing the issue of what constitutes a "single family," the district court cited Moore v. City of East Cleveland which held that the right to live together as a family may not be limited to only a few categories of related individuals by a housing ordinance with criminal penalties. For the reasons expressed previously in this opinion, we find Moore not applicable to the instant case.

Conclusion
We conclude that age limitations and restrictions may be enforced if reasonably related to a lawful objective and not applied in an arbitrary or discriminatory manner. In the instant case we find that the premises were in fact used as a single family residence and the age restriction was selectively and arbitrarily applied. Consequently, neither the age nor the single family restrictions may in this circumstance be judicially enforced, and we agree with the result reached by the district court.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD and SUNDBERG, JJ., concur.
NOTES
[1] Art. V, § 3(b)(1), (3), Fla. Const.
[2] See generally 7 Stetson Intramural L.Rev. 193 (Spring 1978).