485 So.2d 865 (1986)
METROPOLITAN DADE COUNTY FAIR HOUSING AND EMPLOYMENT APPEALS BOARD, Petitioner,
v.
SUNRISE VILLAGE MOBILE HOME PARK, INC., Respondent.
No. 85-1057.
District Court of Appeal of Florida, Third District.
March 25, 1986.
Robert A. Ginsburg, County Atty., and John McInnis, Asst. County Atty., for petitioner.
Schild & Lucas and Elliott Heywood Lucas, for respondent.
Before SCHWARTZ, C.J., and BARKDULL, HENDRY, HUBBART, NESBITT, BASKIN and FERGUSON, JJ.[*]
BASKIN, Judge.

ON REHEARING EN BANC
On June 18, 1985, this court denied a Petition for Writ of Certiorari in which the Metropolitan Dade County Fair Housing and Employment Appeals Board [Board] sought to overturn a circuit court appellate opinion reversing the Board's finding that *866 Sunrise Village Mobile Home Park, Inc. [Sunrise Village] engaged in age discrimination. The circuit court declared chapter 11A, section 11A, of the Metropolitan Dade County Code [Code] unconstitutional insofar as it prohibits reasonable age restrictions in housing. In response to the Board's Motion for Rehearing En Banc, this court heard oral argument. Fla.R. App.P. 9.331. Having afforded the litigants en banc consideration, we deny the relief sought.
The impetus for this action was the refusal of Sunrise Village to allow James Reid, Jr., a twenty-nine year old employed individual, to occupy the mobile home he purchased. The home was situated on a lot owned by Sunrise Village and located in its mobile home park. Reid was informed before he purchased the home that he would have to obtain the approval of Sunrise Village before becoming a resident. When he spoke to the manager, Reid was told that he was too young to live in the park which was being developed as a retirement community. Reid then filed a complaint with the Board charging that Sunrise Village engaged in age discrimination in housing, in violation of chapter 11A, section 11A-3 of the Code.[1] Despite his failure to gain the approval of Sunrise Village, Reid purchased the mobile home.
Following an investigation, the Executive Director of the Board issued a report based on Reid's complaint; she concluded that Sunrise Village had engaged in age discrimination. The Director recommended that the Board order Sunrise Village to compensate Reid in the amount of $7,000 for humiliation, embarrassment, and mental distress, and to permit Reid to move into the park. Sunrise Village appealed the Director's findings to the Board, which conducted a hearing and adopted the Director's findings.[2] Sunrise Village appealed to the appellate division of the eleventh judicial circuit, pursuant to section 11A-9 of the Code. The circuit court, relying on White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla. 1979), reversed the Board's decision, stating:
We reverse the Board's decision upon a holding that it results in an unconstitutional restraint on the right of the mobile home park owner to use its property for a legitimate purpose, namely, the creation of a retirement community. To the extent that Chapter 11A, Section 11A of the Dade County Code requires the Board's finding, it is deemed unconstitutional.
... .
Since the Dade County ordinance does not allow for [a] judicially determined reasonable age restriction, and there is no evidence in the record that the restriction was arbitrarily applied to Reid or that the particular restriction is unreasonable, the category of age must be deleted from the anti-discrimination ordinance. (emphasis in original)
The Board challenged the circuit court's decision by filing a Petition for Writ of Certiorari with this court. When the Petition was denied, the Board requested, and was afforded, rehearing en banc.
District court review of an order entered by a circuit court sitting in its appellate capacity is limited to a determination *867 of whether the circuit court afforded petitioner procedural due process and observed essential requirements of law. City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982); Tomeu v. Palm Beach County, 430 So.2d 601 (Fla. 4th DCA 1983). The district court may not reweigh the evidence. Metropolitan Dade County v. Mingo, 339 So.2d 302 (Fla. 3d DCA 1976). Only when the circuit court departs from required procedures may the district court exercise its discretion and grant review by certiorari. "The district courts should use this discretion cautiously so as to avert the possibility of common-law certiorari being used as a vehicle to obtain a second appeal." Henshaw v. Kelly, 440 So.2d 2, 7 (Fla. 5th DCA 1983) (quoting Combs v. State, 436 So.2d 93, 96 (Fla. 1983)), review denied, 450 So.2d 486 (Fla. 1984). An examination of the record before us indicates that the circuit court afforded petitioner a full appeal in compliance with due process requirements, and that it observed essential legal principles in rendering its decision. Thus, no basis exists for the exercise of this court's discretionary review.
According to article I, section 2 of the Florida Constitution, all persons have the right to possess property and to use that property in any legitimate manner not in conflict with the public welfare. Palm Beach Mobile Homes, Inc. v. Strong, 300 So.2d 881 (Fla. 1974); Miller v. MacGill, 297 So.2d 573 (Fla. 1st DCA 1974), cert. denied, 307 So.2d 183 (Fla. 1975). A statute or regulation which limits or restrains a property owner's use of his property may infringe on the property owner's constitutional rights. See Palm Beach Mobile Homes; Miller. Although the legislature or county commission may, in the exercise of its police powers, promulgate statutes and ordinances regulating property use, Palm Beach Mobile Homes; Moviematic Industries Corp. v. Board of County Commissioners, 349 So.2d 667, 671 (Fla. 3d DCA 1977); Miller, the regulation must bear a substantial relationship to the public health, safety, morals, and general welfare. Coca Cola Co., Food Division v. State, Department of Citrus, 406 So.2d 1079, 1084-85 (Fla. 1981), dismissed sub nom. Kraft, Inc. v. Florida, Department of Citrus, 456 U.S. 1002, 102 S.Ct. 2288, 73 L.Ed.2d 1297 (1982); Palm Beach Mobile Homes. If the means employed do not have a real and substantial relationship to the avowed or ostensible purpose, the law-making body has exceeded the legitimate bounds of its police power. Palm Beach Mobile Homes, 300 So.2d at 885 (quoting Atlantic Coastline Railroad v. City of Goldsboro, 232 U.S. 548, 34 S.Ct. 364, 58 L.Ed. 721 (1914)).
The ordinance in question states that its goal is to assure equal opportunity to all persons to live in decent housing facilities. Ch. 11A, § 11A-1, Metropolitan Dade County Code. Although the commission, in promulgating the ordinance, adopts a laudatory policy, it utilizes extreme methods to implement its goal. The effect of the ordinance is to eliminate all adult and retirement housing in its jurisdiction, a drastic means of fulfilling its purpose of assuring decent housing.
We reject the Board's assertions that the circuit court's application of the policy set forth by the Florida supreme court in White Egret was inappropriate in this case. In White Egret, the court stated that "age limitations or restrictions are reasonable means to accomplish the lawful purpose of providing appropriate facilities for the differing housing needs and desires of varying age groups... . Age restrictions are a reasonable means to identify and categorize the varying desires of our population." White Egret, 379 So.2d at 351; see Star Lake North Commodore Assoc. v. Parker, 423 So.2d 509 (Fla. 3d DCA 1982); Taxpayers Association v. Weymouth Township, 80 N.J. 6, 364 A.2d 1016 (1976), cert. denied, 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977). Elderly individuals may require housing designed to provide a quiet atmosphere and to satisfy other needs peculiar to the elderly. White Egret. Cogent policy reasons for permitting the *868 establishment of retirement communities are set forth in Weymouth.[3]
The rapid increase of the elderly population has brought increasing public recognition of the special problems confronting this age group... . Among these problems are the special housing needs of the elderly. The lack of housing specially designed to meet the needs and desires of the elderly is a matter that has generated increasing public concern... .
In part the need of the elderly for specialized housing results from the fixed and limited incomes upon which many older persons are dependent... .
In part, though, the need for specialized housing transcends economic status and results from the particular physical and social problems of the elderly... .
... .
... The elderly are apt to be less mobile than younger persons. They may have lost friends and relatives of comparable age and background. As a result, readily accessible companionship becomes increasingly important to them. In addition, the fact that children may have moved away sometimes causes elderly persons to seek an age-homogeneous environment to replace broken family ties... . Such an environment also helps older citizens to adjust to the social and psychological effects of retirement. .. .
... .
In addition, age-homogeneous communities afford a sense of security to their residents and thereby reduce the fear of criminal victimization... . Finally, these communities facilitate social relations and increase opportunities for the peer contact which many older persons need and desire. (citations omitted)
Weymouth, 80 N.J. at 24-29, 364 A.2d at 1026-28.
The White Egret court recognized that reasonably applied and fairly enforced age restrictions are constitutional. Utilizing White Egret principles, the circuit court determined that the challenged ordinance fails to permit the reasonable age discrimination authorized by White Egret, and that no evidence indicated the age restriction was arbitrarily or selectively applied to Reid.
Finding that the circuit court observed essential requirements of law, we deny the relief sought. We certify as a question of great public importance, Fla.R.App.P. 9.030(a)(2)(v):
"Under the principles enunciated in White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla. 1979), is chapter 11A, section 11A-3 of the Metropolitan Dade County Code an unconstitutional exercise of the county commission's police powers insofar as the ordinance prohibits reasonable age discrimination in housing?"
HENDRY and NESBITT, JJ., concur.
BARKDULL, J., concurs in conclusion to deny certiorari.
SCHWARTZ, Chief Judge (dissenting).
In my view, it is beyond doubt that a legislative prohibition of discrimination on the basis of age in providing housing is constitutionally valid. I thus respectfully, but completely, disagree with the plurality's conclusion on this issue, which is the only one now before us,[1],[2] and would therefore quash the decision below.
*869 The ordinance in question is firmly rooted in the most fundamental source of governmental authority: the police power. That doctrine validates any enactment which may reasonably be construed as expedient for the protection or encouragement of the public health, safety, welfare or morals. Newman v. Carson, 280 So.2d 426 (Fla. 1973). Anti-discrimination laws like this  which prohibit the arbitrary exclusion of a class of citizens from otherwise publicly available facilities and services  are clearly related to the most basic concerns of the public welfare and morality and thus may not be struck down. See e.g., Roberts v. United States Jaycees, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984); In re Cox, 3 Cal.3d 205, 90 Cal. Rptr. 24, 474 P.2d 992 (1970). Indeed, I think it self-evident that government may properly conclude that it is simply wrong to discriminate on the basis of a personal characteristic over which the concerned individual has no control  whether it be race, sex, handicap or age; therefore, there can be no basis for interfering with a legislative conclusion to forbid it.
While, probably because of the obviousness of this proposition, I have been unable to find any prior instance in which the contrary argument has ever been advanced, let alone accepted as by the majority, so that there is no quotable language which explicitly so holds, I am content to rely on the Supreme Court's statement that a statute which
reflects the State's strong historical commitment to eliminating discrimination and assuring its citizens equal access to publicly available goods and services... [reflects a] goal [which] plainly serves compelling state interests of the highest order.
Roberts, 468 U.S. at ___, 104 S.Ct. at 3253, 82 L.Ed.2d at 475. This proposition, that any law forbidding discrimination essentially provides its own justification, takes on additional force in the particular case of age discrimination in housing, in which the lawmakers may well consider it appropriate both to insure equal access to all available residential facilities and to prevent the creation of age ghettos from which neither the elderly nor, as here, the more youthful may be excluded. Marina Point, Ltd. v. Wolfson, 30 Cal.3d 721, 180 Cal. Rptr. 496, 640 P.2d 115 (1982), cert. denied, 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982). On these bases, numerous jurisdictions, either by specific legislation, judicial interpretation of general statutory provisions, or both, have determined to preclude age discrimination in a variety of contexts; see, e.g., 42 U.S.C.A. §§ 6101 et seq. (West 1983); 29 U.S.C.A. § 623 (West 1985); Cal. Civ.Code § 51 (West 1982); Marina Point; and, more specifically, to forbid age restrictions in access to housing. Cal.Civ.Code § 51 (West 1982) as interpreted in Marina Point; Conn. Gen. Stat. Ann. § 46a-64 (West Supp. 1985); Mich. Stat. Ann. §§ 3.548 (102), 3.548 (502) [M.C.L. §§ 37.2101, 37.2502] (Callaghan 1985); N.H. Rev. Stat. Ann. § 354-A:8 V (1984); see Ariz. Rev. Stat. Ann. § 33-1317 (Supp. 1985) (prohibiting discrimination against children in rental property); Del. Code Ann. tit. 25 § 6503 (1974) (same); Ill. Ann. Stat. ch. 80 § 37 (Smith-Hurd 1966); *870 Mass. Gen. Laws Ann. ch. 151B, § 4 subd. 11 (West Supp. 1985) (same); N.J. Stat. Ann. § 2A:42-101 (West Supp. 1985) (same); see generally J. Kushner, Fair Housing §§ 1.06, 2.06 (1983); R. Schwemm, Housing Discrimination Law 367, 379 (1983). As has been noted, the validity of these provisions has never before now even been questioned in the reported decisions or in the scholarly treatments of the issue. See J. Kushner, supra; R. Schwemm, supra. I remain unaware of any cognizable grounds to do so.
Indeed, ironically enough, the only serious constitutional issue which has arisen in this area concerns attacks upon the validity of legislation such as that considered in Taxpayers Association v. Weymouth Township, 80 N.J. 6, 364 A.2d 1016 (1976), cert. denied, 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977), cited by the plurality, which specifically authorizes age restrictions in housing. See Travalio, Suffer the Little Children  But Not in My Neighborhood: A Constitutional View of Age-Restrictive Housing, 40 Ohio St.L.J. 295 (1979). Because age is not a so-called suspect classification, Sasso v. Ram Property Management, 431 So.2d 204 (Fla. 1st DCA 1983), approved, 452 So.2d 932 (Fla. 1984), appeal dismissed, ___ U.S. ___, 105 S.Ct. 498, 83 L.Ed.2d 391 (1984), Florida, as clearly indicated by White Egret Condominium v. Franklin, 379 So.2d 346 (Fla. 1979), would undoubtedly follow New Jersey in upholding such a law. It is, however, the ultimate non sequitur to draw from a conclusion that a legislative decision to permit discrimination is valid the holding that the opposite legislative decision to prohibit it is not. In view of the discretion and power of the legislature to make its own determinations as to appropriate public policy, quite the contrary is true.
As I understand it, Judge Baskin's opinion is founded on the conclusion that the ordinance runs contrary to the "cogent policy reasons" held in Weymouth to justify the restriction of housing developments to the elderly.[3] But such a finding is simply not within the power of this court or any other to make. Whether the considerations cited are indeed sound and whether, if so, they justify a departure from the Commission's general anti-age discrimination policy  as other legislative bodies have concluded; e.g., Cal.Civ.Code §§ 51.2, 51.3 (West Supp. 1986); Conn. Gen. Stat. Ann. § 46a-64(b)(4) (West Supp. 1985); N.H. Rev. Stat. Ann. § 354-A:8 V-b(d) (1984); see also Weymouth, 80 N.J. 6, 364 A.2d 1016; but see Schmidt v. Superior Court for Santa Barbara, 170 Cal. App.3d 84, 215 Cal. Rptr. 840 (1985), pet. for review granted, ___ Cal.3d ___, 218 Cal. Rptr. 303, 705 P.2d 876 (1985), and as it did itself with respect to children[4]  are questions solely for the commission to answer. It is axiomatic that, as Justice Terrell said:
[c]ourts are never permitted to strike down an act of the Legislature because it fails to square with their individual social or economic theories or what they deem to be sound public policy.
Ball v. Branch, 154 Fla. 57, 59, 16 So.2d 524, 525 (1944); accord, e.g., Hamilton v. State, 366 So.2d 8, 10 (Fla. 1978) ("The Legislature has a great deal of discretion in determining what measures are necessary for the public's protection, and this Court will not, and may not, substitute its judgment for that of the Legislature insofar as the wisdom or policy of the act is concerned.").
A fortiori, White Egret affords no basis for the circuit court conclusion. That decision simply holds, in the absence of any constitutional or statutory provision on the question, that age restrictions may properly be the subject of a private contract such as a condominium agreement. This conclusion has nothing whatever to do with the ability of the appropriate legislative body *871 to enact and enforce a contrary law. See 11 Fla.Jur.2d Contracts § 83 (1979).
In sum, a duly enacted statute or ordinance such as this may be invalidated only if it contravenes some established constitutional right or privilege. No one has even suggested that there is a general right to discriminate on the basis of age or a particular one to operate a housing facility restricted to senior citizens. Thus, the decision rendered below and endorsed by this court is a totally unsupportable judicial usurpation of the legislative prerogative. I would grant the petition for certiorari.[5]
HUBBART and FERGUSON, JJ., concur.
NOTES
[*] Daniel S. Pearson and Jorgenson, JJ. are recused from consideration of this case.
[1] Section 11A-3 provides:

In connection with any of the transactions set forth in this section which affects any housing accommodation or in connection with any sale, purchase, rental or lease of any housing accommodation, it shall be unlawful within the incorporated or unincorporated areas of Dade County for a person, owner, financial institution, real estate broker or real estate salesman, or any representative of the above, to:
(1) Refuse to sell, purchase, rent or lease, or otherwise deny to or withhold any housing accommodation or to evict a person because of his race, color, religion, ancestry, natural origin, age, sex, physical handicap, marital status or place of birth... . (emphasis supplied)
"Age" is defined in section 11A-2(14) of the ordinance as "the chronological age of an individual who is eighteen (18) years old or older."
[2] In the interim, the circuit court entered a temporary injunction requiring Sunrise Village to permit Reid to move into the park.
[3] The United States Congress has adopted several programs designed to provide housing for the elderly. See generally, 12 U.S.C. §§ 1701-1750g, 42 U.S.C. § 1485. "These sections represent an implicit legislative finding that not only do older adults need inexpensive housing, but also that their housing interests and needs differ from families with children." Riley v. Stoves, 22 Ariz. App. 223, 229, 526 P.2d 747, 753 (1974).
[1] There is no question, nor could there be, as to the authority of the Dade County Commission to enact an ordinance on the subject as a matter of its inherent legislative power. Article VIII, § 6(f), Florida Constitution, provides that "the Metropolitan Government of Dade County may exercise all the powers conferred now or hereafter by general law upon municipalities." Section 166.021(3), Fla. Stat. (1985), in turn provides, with exceptions not applicable here, that municipalities have "the power to enact legislation concerning any subject matter upon which the state Legislature may act." On this ground, the power of local government to enact civil rights legislation such as this has been widely asserted and upheld. City of New York v. Claflington, Inc., 40 Misc.2d 547, 243 N.Y.S.2d 437, 439 (Sup.Ct. 1963) (city, by virtue of police power, has authority to enact laws prohibiting discrimination in housing); see generally Annot., 93 A.L.R.2d 1028, Power of Municipal Corporation to Enact Civil Rights Ordinance (1964).
[2] We do not consider whether the manner in which the commission has chosen to enforce its anti-discrimination policy, that is, solely through the mechanism of the Metropolitan Dade County Fair Housing and Employment Appeals Board, has any practical efficacy. That issue is before the supreme court in Southern Records & Tape Service v. Goldman, 458 So.2d 325 (Fla. 3d DCA 1984), review granted, Fla. Case no. 66,290, September 20, 1985 (argued, January 13, 1986). See also Broward County v. La Rosa, 484 So.2d 1374 (Fla. 4th DCA 1986). It should be noted, however, that a reversal of this court's decision in Goldman might well entirely moot the constitutional issue in this case by rendering the administrative decision of the Board of no meaningful or enforceable effect.
[3] It is again ironic that the court's invalidation of the ordinance because it does not permit discrimination by the elderly, will now permit such discrimination against them.
[4] Since the ordinance applies only to those over eighteen, private restrictions against children in condominium developments and the like, as authorized by White Egret and its progeny, are not affected.
[5] I agree to the certification of the cause and the issue to the Supreme Court.