511 So.2d 962 (1987)
METROPOLITAN DADE COUNTY FAIR HOUSING AND EMPLOYMENT APPEALS BOARD, Petitioner,
v.
SUNRISE VILLAGE MOBILE HOME PARK, INC., Respondent.
No. 68626.
Supreme Court of Florida.
July 9, 1987.
Rehearings Denied September 8, 1987.
*963 Robert A. Ginsburg, Dade Co. Atty., and John McInnis, Asst. Co. Atty., Miami, for petitioner.
Elliott Heywood Lucas, Homestead, for respondent.
Jack M. Skelding, Jr. and Keith C. Tischler, of Haben, Parker, Skelding, Costigan, McVoy & Labasky, Tallahassee, for Florida Mfrs Housing Ass'n, Inc., amicus curiae.
McDONALD, Chief Justice.
The Third District Court of Appeal has certified the following question as one of great public importance:
UNDER THE PRINCIPLES ENUNCIATED IN WHITE EGRET CONDOMINIUM, INC. V. FRANKLIN, 379 So.2d 346 (FLA. 1979), IS CHAPTER 11A, SECTION 11A-3 OF THE METROPOLITAN DADE COUNTY CODE AN UNCONSTITUTIONAL EXERCISE OF THE COUNTY COMMISSION'S POLICE POWERS INSOFAR AS THE ORDINANCE PROHIBITS REASONABLE AGE DISCRIMINATION IN HOUSING.
Metropolitan Dade County Fair Housing & Employment Appeals Board v. Sunrise Village Mobile Home Park, Inc., 485 So.2d 865, 868 (Fla. 3d DCA 1986). We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution. We answer the certified question in the negative, but find the administrative award of common law damages for humiliation, embarrassment, and mental distress to be unconstitutional. Accordingly, we quash the opinion of the district court and remand for proceedings consistent with this opinion.
Chapter 11A of the Metropolitan Dade County Code prohibits a wide range of discriminatory activities. Metropolitan Dade County, Fla., Code §§ 11A-1  11A-44 (1976). Article I of chapter 11A prohibits discrimination in housing based on race, color, religion, ancestry, sex, marital status, age, natural origin, physical handicap, or place of birth.[1] More specifically, section 11A-3 of the ordinance prohibits persons *964 from, inter alia, refusing to rent or lease, or otherwise deny or withhold any housing accomodation because of age.[2]
Sunrise Village Mobile Home Park, Inc. (Sunrise Village) operates a mobile home park in Dade County. Sunrise Village owns the land comprising the park and rents individual lots to mobile home owners. Characterizing its park as a retirement community, Sunrise Village has sought to admit as tenants only those persons who are either presently retired or contemplating the park as a retirement home. In furtherance of this goal, Sunrise Village refused to allow James Reid, Jr., a twenty-nine-year-old employed individual, to move into the park. Despite a prior warning from the park manager that he was too young to live in the park, Reid had purchased a mobile home in the park from an elderly couple who wished to move elsewhere. Reid filed a complaint with the Metropolitan Dade County Fair Housing and Employment Appeals Board (board), charging Sunrise Village with age discrimination in housing in violation of section 11A-3. After an investigation, the executive director of the board issued a report which concluded that Sunrise Village had engaged in age discrimination. The report recommended that the board order Sunrise Village both to allow Reid to move into the park and to pay Reid $7,000 as damages for humiliation, embarrassment, and mental distress. Sunrise Village appealed the director's findings and recommendations to the board, which conducted a hearing and adopted the director's findings.
On appeal to the circuit court, the court reversed the board's decision, ruling that White Egret prohibits antidiscrimination ordinances that do not allow for reasonable age restrictions. Relying on White Egret, the circuit court held that the ordinance resulted in an unconstitutional restraint on Sunrise Village's right to utilize its property as a retirement community. The board thereafter petitioned for a writ of certiorari before the Third District Court of Appeal. Finding that the circuit court correctly applied the principles set forth in White Egret, the district court denied the writ. The court, however, certified the instant issue to this Court as a question of great public importance.
The board first argues that the district court's reliance on White Egret is misplaced. We agree. White Egret dealt with the constitutionality of an express covenant in a condominium agreement which prohibited children under the age of twelve from residing on the premises. This Court held that such a restrictive covenant did not violate a condominium purchaser's constitutional rights of marriage, procreation, association, or equal protection.[3] Noting that age is not a suspect classification and that, therefore, a restriction on individual rights based on age need not pass a strict scrutiny test, we found the restriction to be reasonable and rationally related to a permissible objective. 379 So.2d at 351. See Pomerantz v. Woodlands Section 8 Association, Inc., 479 So.2d 794, 794 (Fla. 4th DCA 1985), review denied, 491 So.2d 280 (Fla. 1986); Sasso v. Ram Property Management, 431 So.2d 204, 221 (Fla. 1st DCA 1983), approved, 452 So.2d 932 (Fla.), appeal dismissed, 469 U.S. 1030, 105 S.Ct. 498, 83 L.Ed.2d 391 (1984). White Egret recognizes that age restrictions in housing are reasonable means for accomplishing the lawful purpose of providing the facilities *965 necessary to meet the differing housing needs of various age groups. Id. at 350-51. In White Egret, however, no legislative body had enacted any statute or ordinance in contravention of the condominium association's restrictive covenant. Therefore, although White Egret stands for the proposition that reasonable age restrictions imposed by private parties are enforceable, White Egret is wholly inapplicable to a situation in which the restrictive provision is contrary to a local ordinance.
Pursuant to police power, local governments may enact ordinances reasonably necessary for the protection of the public health, safety, welfare, or morals of their communities. Clarke v. Morgan, 327 So.2d 769, 774 (Fla. 1975), (quoting Safer v. City of Jacksonville, 237 So.2d 8, 12 (Fla. 1st DCA 1970)); Brevard County v. Woodham, 223 So.2d 344, 347 (Fla. 4th DCA), cert. denied, 229 So.2d 872 (Fla. 1969). If necessary, these ordinances may interfere with otherwise protected rights so long as the interference bears a reasonable relationship to the public need served. Coca-Cola Co., Food Division v. Department of Citrus, 406 So.2d 1079, 1084-85 (Fla. 1981), appeal dismissed sub nom. Kraft, Inc. v. Florida Department of Citrus, 456 U.S. 1002, 102 So.2d 2288, 73 L.Ed.2d 1297 (1982); Sarasota County v. Barg, 302 So.2d 737, 741 (Fla. 1974). Accordingly, local governments have the power to adopt appropriate legislation to further the elimination of invidious discrimination in such essential areas of human concern as housing and employment. Broward County v. La Rosa, 505 So.2d 422 (Fla. 1987). See 1984 Op.Att'y Gen.Fla. No. 84-97 (Oct. 22, 1984). Moreover, article VIII, section (6)(f), Florida Constitution, provides that "[t]o the extent not inconsistent with the powers of existing municipalities or general law, the Metropolitan Government of Dade County may exercise all the powers conferred now or hereafter by general law upon municipalities." Section 166.021(3), Florida Statutes (1981), grants to municipalities the power to enact legislation concerning any subject matter upon which the state legislature may act.[4] Without question, the legislature may enact laws aimed at eliminating invidious discrimination. Thus, we find that Dade County had the authority to enact an otherwise valid antidiscrimination ordinance prohibiting, among other things, age discrimination in housing.
The goal of the ordinance is to assure equal opportunity to all persons to live in decent housing facilities. Metropolitan Dade County, Fla., Code, § 11A-1 (1976). Yet we acknowledge Sunrise Village's argument that the ordinance effectively eliminates retirement housing in Dade County. Although the district court asserted that such a prohibition constitutes an extreme method for achieving the ordinance's goal, we must emphasize that legislative bodies have broad discretion in determining what measures are necessary in order to protect the public health, safety, and general welfare. Courts may not substitute their social and economic beliefs for the judgment of legislative bodies which are elected to pass laws, nor may the judiciary pass on the wisdom of legislative enactments. Kahn v. Shevin, 416 U.S. 351, 356 n. 10, 94 S.Ct. 1734, 1737 n. 10, 40 L.Ed.2d 189 (1974); Mourning v. Family Publications Service, Inc., 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); State v. Yu, 400 So.2d 762, 765 (Fla. 1981), appeal dismissed sub nom.; Wall v. Florida, 454 U.S. 1134, 102 S.Ct. 988, 71 L.Ed.2d 286 (1982); Barnes v. B.K. Credit Service, Inc., 461 So.2d 217, 219 (Fla. 1st DCA 1984), review denied, 467 So.2d 999 (Fla. 1985).
Notwithstanding our finding that Dade County has the authority to enact ordinances prohibiting age discrimination in *966 housing, we nevertheless find the $7,000 award of unliquidated damages for Reid's humiliation, embarrassment, and mental distress to be unconstitutional based on our recent decision in Broward County v. La Rosa. In La Rosa this Court considered the constitutionality of an ordinance creating an administrative agency known as the Broward County Human Rights Board (board). The ordinance empowered the board to investigate alleged discriminatory practices and award common law money damages for such noneconomic injuries as humiliation and embarrassment. We held that the section of the ordinance authorizing the board to award common law money damages for such nonquantifiable injuries violated both article II, section 3 (separation of powers) and article I, section 22 (right to a jury trial) of the Florida Constitution. LaRosa, at 423-24. Therefore, we hold that section 11A-7(5)(f)(ii) of the instant ordinance is unconstitutional to the extent that it authorizes administrative awards of common law damages for such nonquantifiable injuries as humiliation, embarrassment, and mental distress.
Accordingly, we answer the certified question in the negative, quash the opinion of the district court,[5] and remand for proceedings consistent with this opinion.
It is so ordered.
EHRLICH, SHAW and BARKETT, JJ., concur.
OVERTON, J., concurs in part and dissents in part with an opinion.
ADKINS, J. (Ret.), concurs in part and dissents in part with an opinion.
OVERTON, Justice, concurring in part, dissenting in part.
I fully concur with the holding that the administrative award of common law damages for humiliation, embarrassment, and mental distress is unconstitutional. I dissent, however, from that portion of the opinion holding that Dade County, under its police power, may totally eliminate retirement housing in Dade County by a broad age discrimination ordinance that does not require a showing that a particular age restriction is unreasonable or arbitrary in its application.
In White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla. 1979), we recognized that "age limitations or restrictions are reasonable means to accomplish the lawful purpose of providing appropriate facilities for the differing housing needs and desires of the varying age groups." Id. at 351. We explained:
The urbanization of this country requiring substantial portions of our population to live closer together coupled with the desire for varying types of family units and recreational activities have brought about new concepts in living accommodations. There are residential units designed specifically for young adults, for families with young children, and for senior citizens. The desires and demands of each category are different. Young adult units are predominantly one-bedroom units with extensive recreational facilities designed for the young, including tennis and racquet ball courts, weight rooms, saunas, and even disco rooms. The units designed principally for families are two- to four-bedroom units with recreational facilities geared for children, including playgrounds and small children's swimming pools. Senior citizen units are limited to one- and two-bedroom units designed to provide the quiet atmosphere that most of our senior citizens desire. These units may provide extra wide doors throughout the complex to allow sufficient clearance for wheelchairs and walkers and recreational facilities such as card rooms and shuffleboard courts. Although tennis courts and playgrounds may be desirable for younger tenants and owners, such facilities would be a waste of funds and be largely unused in a development which housed a substantial number of senior citizens. We cannot ignore the fact that some housing complexes are specifically designed for certain age groups. In our view, age restrictions are a reasonable *967 means to identify and categorize the varying desires of our population. The law is now clear that a restriction on individual rights on the basis of age need not pass the "strict scrutiny" test, and therefore age is not a suspect classification. See Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed. 520 (1976). We do recognize, however, that these age restrictions cannot be used to unreasonably or arbitrarily restrict certain classes of individuals from obtaining desirable housing. Whenever an age restriction is attacked on due process or equal protection grounds, we find the test is: (1) whether the restriction under the particular circumstances of the case is reasonable, and (2) whether it is discriminatory, arbitrary, or oppressive in its application.
Id. Age is not a suspect classification and, therefore, such restrictions need not pass the strict scrutiny test. Consequently, the burden is on the government to establish a rational basis for the restriction in the particular circumstances that it is applying the ordinance. In the instant case, the majority has approved the ordinance without requiring the county to establish that this particular restriction is reasonable and is not discriminatory, arbitrary, or oppressive in its application.
If this ordinance is strictly applied in the manner contemplated by the majority, it clearly will eliminate beneficial federally supported mortgage funding for senior citizen developments in Dade County. I reach that conclusion because Congress has established age limitations in recognizing the need for senior citizen housing developments by including an age minimum of sixty-two years for occupancy of certain housing facilities. See 12 U.S.C. § 1701 et seq. (1982); 42 U.S.C. § 301 et seq. (1982); 12 U.S.C. § 1701q(d)(4) (Supp. 1979) (minimum age); and 42 U.S.C. § 1485(d)(3) (1982). I would construe the ordinance to apply only where the county is able to show that a particular age restriction is unreasonable and discriminatory in its application.
ADKINS, Justice (Ret.), concurring in part, dissenting in part.
I concur in the answer to the certified question, but dissent from the reversal of the damage award.
Agencies may not be delegated power to administer what is deemed to be criminal law and agencies may not serve when juries are required. Except for these two clear propositions, federal courts throughout the twentieth century have allowed Congress to determine what judicial power to delegate to agencies. 1 K. Davis, Administrative Law Treatise § 3.10 (2d ed. 1978).
Following the federal lead, we approved the creation of malpractice hearing panels empowered to make conclusions of law and fact. Carter v. Sparkman, 335 So.2d 802 (Fla. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977).
Dade County is a chartered county, so its code has the same force as special acts of the legislature. By this code, the Fair Housing and Appeals Board was empowered to exercise quasi-judicial powers in connection with its functions. It provides a procedure for notice and hearing and prescribes rules for the conduct of hearings and presentation of evidence. A panel determines whether an unlawful discriminatory act has occurred.
The combination in the ordinance of statutory guidelines as to prohibited conduct, availability of a due process hearing, and provisions for judicial review serve to circumscribe the agency's area of discretion within constitutional limits.
A majority of the courts have held that similar statutes did not unconstitutionally delegate judicial power to an administrative agency. See Percy Kent Bag Co. v. Missouri Commission on Human Rights, 632 S.W.2d 480 (Mo. 1982), citing cases from West Virginia, Nebraska, New Jersey, Kentucky, and New York, as well as the United States Supreme Court.
In Canney v. Board of Public Instruction of Alachua County, 278 So.2d 260 (Fla. 1973), we held that a board exercising quasi-judicial powers is not a part of the *968 judicial branch of government. The Canney decision is consistent with a holding that an adjudicative power may be conferred upon the agency unless it is criminal law or requires a jury trial.
A jury trial is not required for administrative adjudications under a discrimination law as this right was nonexistent at the time we adopted the constitutional provision. Dudley v. Harrison, McCready & Co., 127 Fla. 687, 173 So. 820 (1937). Nor is a jury required to assess the amount of damages. Kentucky Commission on Human Rights v. Fraser, 625 S.W.2d 852, 854 (Ky. 1981), and cases cited.
Rule 1.610, Florida Rules of Civil Procedure, authorizes the court to assess damages when a temporary injunction is dissolved. These damages could be liquidated or unliquidated, so there is no common law right to the assessment of damages unless the damages flow from the assertion of a right requiring a jury trial.
Humiliation and embarrassment are, by their nature, not easily quantified, yet juries have historically been entrusted with assessing similarly intangible elements of injury, such as pain and suffering, without dollar limits. As long as judicial review is available, there is no inherent evil in committing the same fact-finding function to an administrative body.
In furtherance of the administration of justice, we should recognize the right of the legislature to delegate judicial power in all cases except criminal cases and those requiring a jury trial at the time our constitution was adopted. For the past few years we have been unable to keep pace with the increasing flood of litigation. We can either continue to meet this crisis by adding to the number of judges and try to dispose of the ever-increasing backlog of cases by amending our antiquated system, or we can use other procedures in the administration of justice. Dade County antidiscrimination law attempts to do this. We should not shut the door on this method of settling disputes among citizens. Not only is it constitutional, but also less expensive for the citizen and the state.
We erred in Broward County v. La Rosa, 505 So.2d 422 (Fla. 1987), and should recede from the portion which prohibits the assessment of damage.
NOTES
[1] Metropolitan Dade County, Fla., Code § 11A-2(3) (1976) (emphasis added). Age, as defined in the ordinance, "means the chronological age of an individual who is eighteen (18) years old or older." Id. § 11A-2(14).
[2] Section 11A-3 provides in pertinent part:

In connection with any of the transactions set forth in this section which affects any housing accommodation or in connection with any sale, purchase, rental or lease of any housing accommodation, it shall be unlawful, except as provided in section 11A-1(2), within the incorporated or unincorporated areas of Dade County for a person, owner, financial institution, real estate broker or real estate salesman, or any representative of the above, to:
(1) Refuse to sell, purchase, rent or lease, or otherwise to deny or withhold any housing accommodation or to evict a person because of his race, color, religion, ancestry, national origin, age, sex, physical handicap, marital status or place of birth... .
Metropolitan Dade County, Fla., Code, § 11A-3(1) (1976) (emphasis added).
[3] Although we held in White Egret that age restrictions were not per se unreasonable or unconstitutional, we found the particular provision in question in White Egret to be unenforceable due to the condominium association's arbitrary and selective enforcement of the covenant.
[4] Section 166.021(3), Fla. Stat. (1981), contains certain enumerated exceptions to the grant of legislative authority to municipalities. Specifically, municipalities may not enact legislation concerning: (1) the subjects of annexation, merger or the exercise of extraterritorial power which require the enactment of a general or special law pursuant to art. VIII, § 2(c), Fla. Const.; (2) any subject expressly prohibited by the constitution; (3) any subject expressly preempted to the state or county by the constitution or general law; or (4) any subject preempted to the county pursuant to a validly adopted county charter. Id. § 166.021(3)(a)-(d).
[5] In doing so, we approve the dissent of Judge Schwartz.